| 19 | 277 |
| 117 | 564 |
| 117 | 566 |

## WILLIAMS & WIFE vs. HARRISON, GUARDIAN, &c..

1. Guardians, executors and administrators, who enter into a joint bond for the faithful performance of their duties, are liable for the acts and defaults of each other, *unless the bond itself shows*, that they did not intend to become bound for each other's defaults.

2. The Orphans' Court has jurisdiction to compel guardians who have given a joint bond to account for each other's defaults.

3. *It seems*, that the Orphans' Court may render a *joint decree* against joint executors, administrators or guardians, when they are jointly liable for the acts of each other.

4. When guardians have given a joint bond, and one of them dies insolvent, the surviving guardian may be directly charged in the Orphans' Court, not only with his own defaults, but also with those of the deceased guardian.

5. When two guardians have given a joint bond, one is not liable for a default committed by the other, while sole guardian, before the execution of their joint bond.

6. When money is shown to have come to the hands of a guardian at a particular time, and there is no evidence whatever that any disposition has been made of it, it is the province of the jury to decide whether it continued in her possession until a particular time afterwards.

7. But when a guardian is shown to have received money at a certain time, and there is also evidence tending to show that she had used it prior to a certain subsequent time, the presumption that it continued in her possession until such subsequent time cannot be drawn, either by the court, or by the jury, for the purpose of charging a surety with it.

8. A guardian who has acted as such for only seven months, will not be charged with the amount of a debt due from a preceding guardian, on the ground of neglect in not having collected it, when it is shown that the sureties of the former guardian, who are bound for it, are entirely solvent.

ERROR to the Probate Court of Lowndes.

ELMORE and JUDGE, for plaintiffs in error:

Guardians' accounts and settlements are placed on the same footing as those of administrators.—Clay's Dig. § 27, 226; ib. § 38, 304; ib. § 42, 304.

Settlements of Harrison and Larkins, in October, 1840, were

defective, and were not evidence, and the same as to that of Harrison, in October, 1840.—Ashley v. Ashley, 15 Ala. 75; Willis v. Ashley, 16 Ala. 652.

Principals in bond are liable for each other's acts as sureties, and are primarily liable before their sureties.—Little v. Heard, 16 Ala. 358; Little v. Knox, 15 Ala. 576; Kavanaugh, v. Thompson, 16 Ala. 817-823.

The presumption is, that she had this money, and brought it into the joint guardianship.—Townsend v. Everett, 4 Ala. 607; Governor v. Robbins, 7 Ala. 79; Dumas v. Patterson, 9 Ala. 484.

The accounts filed, and Mrs. B's declarations, are part of the *res gestæ*, made while acting in the performance of an official duty.—Bondurant v. Bank of Ala. 7 Ala. 830; Townsend v. Everett, 4 Ala. 607.

An administrator is chargeable on his settlement with a note due by him to his intestate.—Duffie v. Buchanan, 8 Ala. 27; Purdom v. Tipton, 9 Ala. 914; Childress v. Childress, 3 ib. 752.

The ward is entitled to a joint settlement, and of course a joint judgment against the guardians, for what was received by each, and Harrison is liable, whether there was a *devastavit* or not, because they are but the principal.—Kavanaugh v. Thompson, 16 Ala. 823; Little v. Knox, 15 Ala. 576; and the bond is not that administration.

Execution cannot issue against the sureties of deceased executor or administrator, on return of no property, where the settlement is made by the representative of the deceased executor or administrator.—Jenkins v. Gray, 16 Ala. 100.

Harrison is estopped from denying that he was sole guardian. Thompson v. Burdurant, 15 Ala. 346.

When there is no decree, a suit cannot be sustained against the sureties on the settlement.—Judge v. French, 3 S. & P. 263.

Unless there a is final settlement, or a partial one ordering distribution and refunding bond rendered, suit cannot be sustained against the sureties.—Judge v. Coalter, 3 S. & P. 348.

If assets are fixed in the hands of the administrator, and his inability to pay is shown, there is a devastavit, and the suit may be sustained against the sureties.—Judge v. Coalter, 3 S. & P. 348.

Williams & Wife v. Harrison, Guard'n, &c.

The death was a conversion, especially with insolvency.—Governor v. Stonum, 9 Ala. 679-684.

Where a minor at fourteen chooses a guardian, and it is allowed by the court, the previous appointment is tacitly superseded, and the guardian required to settle his accounts.—Kelly v. Smith, 15 Ala. 687.

Harrison cannot question his own appointment in a collateral proceeding. The former guardian could not do it except in a direct proceeding.—Speight v. Knight, 11 Ala. 464; Boyett v. Ker, 7 Ala. 9; White v. Brown, 7 Monroe, 446.

Where a former guardian has been appointed, the court cannot appoint another, unless the first has been renounced or revoked.—Bledsoe v. Burt, 6 Yerg. 458.

The ward might object, but not Harrison. Steele's appointment was then void, the joint guardianship being still in existence, and his act, as such, cannot affect the ward's rights.

Inventory is evidence of their acting as joint guardians; so also, the account filed, and the bond given.—This is evidence against them, but the inventory if evidence for them is only *prima facie*, which may be rebutted.

Where an administrator leaves the State, and the ordinary in South Carolina, grants letters to another, this in itself is a sufficient revocation of the former letters.—McLaurin v. Thompson, Dudley, S. C. 335.

A widow, executrix under the will, may decline acting, and yet be appointed administratrix with the will annexed, and act jointly with another administrator, and her acceptance of this latter appointment would not make her executrix in fact, but would be rather evidence of her renunciation; nor would the appointment of the administrator be void or irregular.—Briscoe v. Vickliffe, 6 How. 157.

CAMPBELL, BOLLING, MAYS, and J. B. STONE, *contra :*

1. Defendant in error was cited by the Probate Court to settle his accounts as joint guardian, and also as sole guardian of Emily Browning, now Emily Williams. He has done so. He is not called upon in this proceeding for the acts and defaults of his co-guardian, Mrs. Elizabeth Browning, now deceased.

2. Joint executors, administrators and guardians are not liable for each other's acts at common law. They are liable only

for joint acts, and each is liable for his separate acts.—Stewart v. Connor, 9 Ala. 803; 11 Johns. R. 16.

3. It is only the giving a joint bond that makes them liable for the acts of each other. Quere—Does that? Harrison, by the joint bond, is only security for Mrs. Browning, if liable to that extent.—Boyd v. Boyd, 3 Gratt. 113; Kirby v. Turner, 1 Hopk. Ch. R. 309; Fonb. Eq. 468; 5 Johns. Ch. R. 296; 8 Leigh's R. 54; 15 Ala. 576. Being only security, he cannot be proceeded against without a decree and an execution returned "no property," against Mrs. Browning.—Judge County Court v. French, 3 S. & P. 263; Judge Limestone County Court v. Coulter, et al., 3 S. & P. 348; Faulk v. Judge Monroe County Court, 2 Port. 538; Thompson v. Bondurant & King, 15 Ala. 346; Little, et al. v. Heard, et al., 16 Ala. 358; Jenkins et al. v. Gray et al. 16 Ala. 100. A party pursuing a summary remedy must comply strictly with the requirements of the statute.

4. The account of Mrs. Browning filed on 2d September, 1839, is not evidence against Harrison. It was prior in time to the execution of the joint bond, though on the same day. It would at most be evidence only of the fact that the account was filed, and not of what it contained. It might, perhaps, be prima facie against her former securities—see 4 Ala. 607. As well might it be contended that the judgment by default in the fall of 1841, was an admission that the money was then on hand, as that Mrs. Browning had it, on the 2d of September, 1839. The mind cannot be satisfied from the evidence in the record that it was in her possession at either of those periods. The evidence should show affirmatively that it was in her possession during the joint guardianship.—9 Ala. 487; 1 How. 104; 1 McLean, 493; 5 How. 29; 15 Peter's 187; 9 Watts & Serg. 109.

5. To make the defendant liable in any proceeding, the $2,718 98-100 must have been on hand during the joint guardianship. The evidence shows sufficiently clear that the money was not on hand when the joint bond was executed, or after. Mrs. Browning kept up the family establishment, she loaned her son money, bought a negro at a high price, paid only a part of this debt when it fell due, she kept no separate account for her daughter, in fact kept no accounts for herself or daughter; she borrowed money from her son-in-law, Steele, soon after the mar-

riage with Larkins, which was in October or November, 1839; she contracted a debt shortly before her marriage, and one of her negroes was sold under execution after the marriage to pay it; she owed several other debts which she never paid, bought no property after the 2d September, 1839, for which she paid; Steele made out her accounts for the court. He made out the one filed 2d September, 1839. If she then had money on hand, he did not know it. Her other son-in-law, George Walker, knew of no money she had on hand on 2d September, 1839, or after. They both lived near her. At her death she had no money, neither had she notes for money loaned, either individually or as guardian. The debts contracted before the giving the joint bond, and the support of the family, &c., must have been paid—they are not presented to her executor.

6. Harrison is not liable on the ground of laches. He would not be required to collect the money in the short time he had to do it in, even if loss to the ward had been the consequence. Mrs. Browning was as solvent in the Fall of 1840, when Harrison resigned and turned over the property of his ward to Steele, who succeeded him as guardian, as she was before. Her securities on the former bond also continued solvent, and are now solvent. No injury has resulted by Harrison's not collecting the money.—See 15 Ala. 333 ; 6 Watts, 185.

DARGAN, C. J.—Elizabeth Browning being guardian of Emily Browning, now Mrs. Williams, on the 2nd day of September, 1839, returned to the Orphans' Court of Lowndes an account current, showing that she was then indebted to her ward in the sum of $2718 99-100. On the same day, she applied to the court to have Edmund Harrison appointed to act jointly with her as guardian, and upon her application, joint letters of guardianship were issued to the said Elizabeth and said Harrison, who thereupon entered into a joint bond in the penal sum of $30,000, with condition, well and truly to perform all the duties that were or might be required of them by law as such guardians. In October afterwards, a joint inventory was returned by the two guardians, but in this inventory, the sum returned by Mrs. Browning as due to her ward on the 2nd September, 1839, is not mentioned.

Mrs. Browning afterwards intermarried with Larkins, and

died insolvent without ever having accounted for this sum, and the object of this suit is to charge Harrison with its payment. This statement of the facts gives rise to the first two questions of law presented by the argument of the plaintiff's counsel. First, that guardians who enter into a joint bond faithfully to perform their duties as such, are liable for the acts and defaults of each other; and secondly, that they, or either of them, may be made to account in the Orphans' Court, for each other's defaults. Independent of all decisions, I should not hesitate to hold, that guardians who enter into a joint bond are liable for each other's acts. The condition of the bond is, that they shall well and truly perform all their duties as guardians. Now, if one fail to perform his duty as such, the condition is broken, and every party to the bond must be held liable, otherwise we should construe the bond not as a joint, but as a several obligation. I cannot conceive how the condition of a joint bond can be said to be broken as to one of the obligors, but not as to the other. To hold that it may, would be to construe it as the several bond of each, and not the joint bond of both.

But we think it is settled by the adjudged cases, that if two or more guardians, executors, or administrators, join in a joint bond for the faithful performance of their duties as such, they are liable for the acts of each other. In the case of Clark and Wife v. The executors of Williams, 6 Gill & John, 288. two administrators joined in a bond for the faithful performance of their duties, and the question was whether they were liable for the acts of each other. It was insisted that they were not, upon the common law rule, that one administrator was not liable for the *devastavit* of his co-administrator, unless he in some way contributed to its commission. But the court said that they could not adopt the construction attempted to be given to the bond, that it was the separate bond of each administrator in which the securities were bound for both, but the administrators not bound for each other. Had the administrators designed to place themselves in that attitude, they should have executed separate bonds.—In the case of Collins v. Carlisle, 7 B. Monroe, 15, the court of appeals of Kentucky say, that administrators who give a joint bond are liable jointly for the acts of each other. So in the case of Hughlett v. Hughlett, 5 Humph., 453, the Supreme Court of Tennessee, held that joint executors, exe-

'cuting a joint bond with securities, are each responsible to credi-tors and distributees for the acts of each other. The same prin-ciple is admitted in the case of Brazier v. Clark, 5 Pick. 96; Brat-ten v. Bateman, 2 Dev. Equ. R. 115; Morrow v. Peyton, 8 Leigh, 54.—See also Little v. Knox, 15 Ala. 576. The only case I have seen that holds a contrary doctrine, is the case of Kirby and Wife v. Turner, et al. 1 Hopkins Ch. R. 309. It was held in that case, that guardians who had executed a joint bond were not bound for the separate acts and defaults of each other, but that they were jointly bound for their joint acts, and separately bound for their separate acts in which the other did not in any manner participate. This case denies that the joint bond alters the liability of joint guardians, and holds that it is the same that it was at the common law, or that it would have been if they had given each a separate bond for his own acts. I can-not, however, doubt, but this case is wrong, and I think the error is in this, that the condition of the bond, being that both will well and truly discharge their duties as guardians, it is broken, if one only makes default, and if the condition be bro-ken, the obligors must be bound. We consider the correct rule to be, that guardians, executors, and administrators who join in a joint bond, are liable for the acts and defaults of each other, and if they would avoid responsibility for each other's acts, they must give separate bonds, or if but one bond be given, it must appear from the instrument that they did not intend to become bound for each other's defaults.—Perkins & Elliott v. Mayfield, 4 Ala. 417. The bond before us made the guardians liable for their joint acts, and also for the acts of each other from the time it was executed.

2. We think they may be compelled to account for each oth-er's defaults in the Orphans' Court, (now called the Court of Probate.) Their liability arises out of the bond which they execute as guardian, and we do not think it can be denied, that this court has full jurisdiction to compel guardians to account to their wards for all debts or personal liabilities growing out of their character as guardian, and due from them to their wards. In the case of Duffie, adm'r. v. Buchanan & Wife, 8 Ala. 27, it was held that on a final settlement of an administrator's account in the Orphans' Court, he might be charged with the amount of a note due from him to the intestate, because it was assets in

his hands.—See also Childress v. Childress, 3 Ala. 752. We cannot distinguish these cases in principle from the case before us. Here the guardian is under a liability to his ward growing out of his bond as guardian; it must therefore be considered as a debt due from him as such, and he must be accountable in the Orphans' Court. But it is contended that the ward would not be entitled to a joint decree against her guardians, though bound for the acts of each other, and if not entitled to a joint decree, such liability cannot be enforced in the Orphans' Court. In the case of Kavanaugh & wife v. Thompson & wife, 16 Ala. 817, it was intimated by this court, that distributees were entitled to a joint decree against administrators, who had given a joint bond, which rendered them liable for each other's acts, but it was not necessary to decide the point in that case. Nor is it necessary to decide it in this, for whether the decrees should be joint or several in the first instance, we think it clear that when one guardian is dead, and his estate insolvent, the surviving guardian may be directly charged, not only with his own, but his co-guardian's defaults.

In conclusion, however, upon this question, we will add, that we do not perceive any valid objection to the practice of rendering a joint decree against joint executors, administrators or guardians, when they are jointly liable for the acts of each other. But as it is not indispensably necessary to decide that point, it may be considered as an open question until the precise point is presented for adjudication.

Coming to the conclusion that joint guardians who have given joint bonds, intending to bind themselves jointly, are liable for the acts of each other, and that they may be compelled to account for each other's defaults in the Orphans' Court, the next inquiry is, whether the joint bond of Mrs. Browning and Harrison covers this sum admitted by her to be due in her return of the 2nd of September, 1839. It is admitted by the counsel of the plaintiffs in error, that if this sum of $2,718 had been converted by Mrs. Browning before that time, if she did not have the money on hand at the time of executing the joint bond, then this sum is not covered by it, for the bond does not bind Harrison for the defaults or acts of Mrs. Browning done or committed before its execution. The liability of Harrison for this sum, upon the bond executed jointly by himself and Mrs.

Williams & Wife v. Harrison, Guard'n, &c.

Browning, depends on the fact, whether she had used the money before the 2nd of September, 1839, when the bond was executed. To solve this question, we must look to the evidence alone. It must be admitted that the return made by Mrs. Browning on the 2nd September, 1839, showing this balance due her ward, is not evidence within itself against Harrison. But as Steele in his testimony states, that the account was made out by him as instructed by Mrs. Browning, and at her request, and that she then stated that she had received the amounts with which she charged herself from the sale of the crops of cotton, we must consider that there is proof that Mrs. Browning came into the receipt of the sums of money at the respective times and in the manner in which she charged herself. What Mrs. Browning said at the time of making out the account, is made evidence against Harrison, because it was brought out by him on the cross examination of Steele. This is the only evidence to show that Mrs. Browning ever received any money of her ward's with the exception of the further proof, that the cotton for the years 1835, 1836, 1837, and 1838, raised jointly by the labor of the slaves of Mrs. Browning and her ward, was sold by her. It is insisted that, as this evidence shows the money to have been once in the possession of Mrs. Browning, it is to be presumed that she retained it in possession as guardian, until the time of rendering her account, and the execution of the joint bond by herself and Harrison. I will not say that it would be improper to draw such an inference in the absence of all other proof, but to my mind, it would be a very weak and inconclusive presumption. In the case of the United States v. Myers, 1 McLean, 493, the question was, whether the securities of Peter Wilson, who was receiver of money at a land office, were bound for an amount that had come to his hands before the execution of the bond. That depended on the fact, whether the money had been converted before the bond was executed. The only evidence to charge the securities was his quarterly returns made to the Secretary of the Treasury, showing the balance in his hands; and it was contended that the presumption was, that the money continued in his possession until the bond was executed. Judge McLean, in the course of his opinion, said, "the receipt of the money by the receiver may be admitted; but suppose, as the fact probably was, that he applied it to objects of a private nature before

the execution of the bond; no one would contend that the sureties were liable. The default in this view was complete before the date of the bond, and there could be no liability on the sureties, unless the bond expressly provided for the case; and unless there had been more evidence before the jury, the defendant could not be charged with any part of this defalcation." He further says, in the same case, "if it had been shown that the whole or any part of the balance due at the date of the bond, came into the hands of the receiver subsequent to its date, or if it had been shown that the balance was in the hands of the receiver, not presumptively, but in fact, at the date of the bond, the surety would be liable. But there appears to have been no evidence before the jury, that the balance was in the hands of the receiver at the date of the bond, or that it came into his hands subsequently."

From this opinion, it appears that Judge McLean held, that the mere receipt of the money by the receiver prior to the execution of the bond, was not evidence as against the securities, that he had it on hand at the date of the bond. I do not, however, intend to assert the rule as broadly as was done by Justice McLean, for the inference of one fact from another is a question for the jury, and if a jury were to find even as against a security, that a sum of money was on hand at a particular time, and this by inference from the fact alone, that it had been received by the principal at a time prior, I should not be disposed to disturb their verdict, if there was no proof to weaken or rebut the presumption. But if the money had been received a considerable time prior to the point of time at which it was sought to show that the money was on hand, and they were to refuse to draw the inference, that it was on hand at this subsequent time, I should be entirely satisfied with their verdict, and would not set it aside. But when there are other circumstances in evidence tending to weaken this presumption, and showing a probability that the money had been used by the principal before the security became bound, it would then be wrong for a court or jury to draw the presumption against the probabilities of the case, for the purpose of charging a security. And we feel entirely satisfied from the facts and circumstances of this case, that the probability is, that the money was used by Mrs. Browning before the date of the bond. She paid the expenses

of the plantation on which her own and her ward's hands worked; she contracted debts for the purchase of property during the years 1836, 1837, and 1838, to the amount of about $2,000; she also lent her son $500; she had but seven or eight hands of her own, and Mr. Steele, who was her son-in-law, and who made out her accounts for her, states that she was illiterate, and kept no accounts of her own or her ward's affairs, and that he does not know of her having any money on hand at the time of making her return or since. I think it but a reasonable presumption, that if she had had the money of her ward on hand at that time, it would have been known to Steele, or that she would have informed him of it. Under these circumstances, and considering that the money must have been received from the crops of 1835, 1836, 1837 and 1838, it would be a rash presumption to say that Mrs. Browning had the money on hand at the date of the bond executed jointly by her and the defendant Harrison. It would be a presumption drawn from one fact, against the probabilities of the case arising from all the circumstances. We think the Judge of the Orphans' Court properly refused to draw it.

It is further insisted, that the defendant is liable for this debt under his individual bond as guardian given upon the removal of Mrs. Browning from office in March, 1840, because it was his duty to have proceeded against her and her securities upon her original bond executed when she was first appointed. We will not lengthen out this opinion by entering into the question, whether it became the duty of Harrison to proceed against her and her securities for the amount which she had admitted to be due to her ward previous to the issuance of joint letters of guardianship to her and the defendant, for the record shows that in October, 1840, the defendant resigned his office in writing, and Steele was appointed guardian in his stead, and that the securities of Mrs. Browning were then, and still are entirely able to pay this debt. A mere failure to sue from the time he became sole guardian until he resigned, which was about seven months, cannot subject him to the payment of the debt on the ground of neglect, the securities bound for it still being solvent.

We can discover no error in the record, and the decree must be affirmed.