The State ex rel. Claunch v. Castleberry.

---

23    85
f124 484
23    85
139 155

# THE STATE ex rel. CLAUNCH vs. CASTLEBERRY.

1. When the defendant in a bastardy proceeding enters into a recognizance for his appearance at court, and his surety in the bond afterwards become judge of probate, the latter is incompetent by reason of interest to preside on the trial of the cause, and any proceedings therein had before him are *coram non judice* and void.

2. If a proceeding under the bastardy act was continued by the defendant at the first term to which he was bound to appear, the County Court had jurisdiction to compel him to enter into recognizance for his personal appearance from term to term and for his good behavior; and if the recognizance contained any superadded condition, it was void only as to that condition, and valid as to the remaining obligations.

3. When a judge of probate improperly refuses to transfer to the Circuit Court a cause in which he is personally interested, *mandamus* lies to compel its transfer.

ERROR to the Circuit Court of St. Clair.

Tried before the Hon. THOS. A. WALKER.

THIS was a proceeding in bastardy, commenced against Castleberry as the putative father of a bastard child, then likely to be born of Sarah Claunch.

The usual oath was taken by the prosecutrix, and a warrant was issued by one R. J. Allen, a justice of the peace, and a bond was duly entered into by the defendant, with John Collins and J. H. Castleberry as securities, conditioned for the appearance of defendant at the December term, 1849, of the County Court of St. Clair County, to abide the order and decree of the court in the premises.

The cause having been regularly brought before said County Court, at the December term, 1849, the defendant filed his affidavit for a continuance, which was granted him ; but it was ordered by the court, that he be recognized in the sum of five hundred (dollars ? this word is omitted,) with good and sufficient securities. Thereupon, the defendant, Wesley M. Collins and Irby Wooley, his securities, were duly recognized in open court in the above sum, to be void on condition that the defendant appear from day to day, and from term to term of said County Court, to abide and perform its order and decree &c.; and the cause coming up at the next term of the County Court, Wooley, one of the parties to the above recognizance, having in the mean time been appointed judge of the County Court of said county, the prosecutrix moved the said judge to transfer the cause to the Circuit Court, by reason of his interest, and consequent incompetency to try it ; but the judge decided that he had no interest which incapacitated him to try the cause.   The defendant, however, " to remove all doubt, offered to give a new bond and security, which was ordered by the court." Thereupon, the defendant, with R. W. Cobb, entered into a recognizance, for the appearance of defendant, and his performance of the order of the court, &c.   To this ruling of the court an exception was saved, and the prosecutrix moved for a continuance, which was granted, upon condition that she would find security for the cost of suit, if finally adjudged against her.   This she refused to give, withdrew her application, and refused to proceed in the cause ; and there being no evidence offered against the defend-

ant, the court ordered him to be discharged, and adjudged that he should recover the cost of said Sarah Claunch, for which an execution should issue.

The prosecutrix then filed her petition before the Circuit Court, for a *mandamus* to issue to the County Court judge, (Wooley,) commanding him to transfer said cause, and setting forth his interest, as above shown by the record, as the reason for such transfer. The circuit judge, (Phelan,) upon an inspection of the record, decided, that the county judge was interested—that his action in the premises was *coram non judice* and void, and ordered the transfer.

At the succeeding March term of the Circuit Court, the papers having been returned by the county judge, the plaintiff announced a readiness to proceed with the cause ; but two counsel, as friends of the court, suggested that the defendant was not before the court, never having been notified. The court ruled otherwise ; and the record states that, "Defendant excepted to the ruling of the court, and then filed his demurrer to the petition for a *mandamus*, and on his application the cause was continued."

At the September term, 1851, "the parties came by their attorneys, and the plaintiff announced herself ready for trial, and thereupon the defendant moved the court for a continuance of the cause, and the facts stated in the application were admitted by the plaintiff ; thereupon, the defendant demurred to the petition for the *mandamus* filed in this cause ; the plaintiff objected to joining in the demurrer, and moved to strike it from the file. The court refused to strike out the demurrer, and compelled the plaintiff to join therein ; thereupon argument being had, it was considered by the court, that the demurrer be sustained—that the defendant go hence, and recover of the plaintiff his cost &c., for which let execution issue, &c."

To reverse this decision and judgment of the Circuit Court, the plaintiff brings the case by writ of error to this court, and here assigns for error:

1. The judgment sustaining the demurrer.
2. In refusing to take cognizance of the cause.
3. In reversing the decision of the same court, made at a previous term.

The defendant in error moves to dismiss the writ of error for want of jurisdiction, and, if this motion fails, joins in error.

The State ex rel. Claunch v. Castleberry.

J. T. MORGAN, for the plaintiff in error:

As to the jurisdiction of the judge of probate to proceed to final judgment in a case where he is interested.—See Caldwell, adm'r, v. Bell & Graham, 1 English's R. 227; 5 Barb. S. C. R. 607; Gay v. Minott, 3 Cushing's R. 352; 3 Comstock's R. 547; 4 vol. U. S. Digest, 112 § § 2 to 7.

A writ of error did not lie from a void judgment.

WHITE & PARSONS, contra :

Wooley, the judge of probate, was not interested in this case, within the meaning of the statutes: 1. Because the statutes do not authorize the judge of the County Court to take a bond " from the person accused." He can only perform such acts, and exercise such jurisdiction, as is conferred upon the court.— See Elliott v. Hall, 8 Ala. R. 508. Therefore the bond taken by the judge of the County Court at its December term, 1849, was void; and it being void, Wooley was not interested.

2. The condition of the bond exceeds the statutory condition, and, to that extent, is clearly void.—Howie & Morrison v. The State, 1 Ala. R. 113. The only statute which we have been able to find, authorizing a bond to be taken for the appearance of the defendant, confers this power on the justice before whom the proceedings are commenced.—Clay's Digest, 134 § 2. The condition of the bond authorized by this act, is performed, if the accused appear before the next County Court of the county, &c. The condition of the bond in this case is in the form of a recognizance. Conceding that the County Court might have taken such a bond as the justice was authorized to take, yet, so far as it departed from the authority, it was void.—Whitted v. Governor, 6 Porter 342; 5 Peters' R. 115.

The condition of such a bond as the justice was authorized to take being performed, by appearance and good behavior in the meantime, would relieve Wooley from all interest which could disqualify him from taking jurisdiction of the case. As to the degree of interest which disqualifies.—See 17 Conn. 542; 1 Denio R. 25; ib. 186 · 12 Conn. 88.

CHILTON, C. J.—The law wisely withholds from every judge, all temptations to depart from the strict line of duty, from considerations of interest, by rendering him incompetent to

sit in any cause in which he is interested. The maxim is '*Nemo judex in causa propria*,' and it is alike founded in common sense, and a just desire to preserve from impurity the fountains of justice.

In Boyer v. Potts, 14 Serg. & Rawle 157, where the question came up, whether a justice of the peace, who had a demand to collect, had acted as agent for the party plaintiff, the court, *per* Gibson J., use the following language : " There was no evidence of any delegation of authority, except what was thought to result from the relations in which the parties stood, of magistrate and suitor ; and the law, certainly, will not from this presume an agency so fraudulent and base. Justices of the peace, no doubt, frequently act as agents for those who employ them ; but they ought to know, that they do so at the peril of being convicted of a highly aggravated misdemeanor, which is indictable at common law. Ignorance cannot palliate a crime of this sort ; for the turpitude of acting both as judge and party in the same cause cannot but be obvious to the dullest comprehension."

The earlier common law reports abound with authorities upon this point.—Style 138 ; 1 Vent. 3 ; Hardress 503 ; Hob. 87 ; Salkeld 396, where Holt, C. J. said : " The Mayor of Hereford was laid by the heels, for sitting in judgment in a cause where he himself was lessor of the plaintiff in ejectment, though he, by the charter, was sole judge of the court." So, in the Earl of Derby's case, 12 Co. 114, it was resolved, that the chamberlain of Chester, " being sole judge of equity, cannot decree any thing, wherein himself is a party ; for he cannot be a judge in his own cause; and this fundamental principle is adhered to with such pertinacity, that it has been held, that no practice to the contrary shall be allowed to overturn it.—2 Str. 1173 ; 5 M. & S. 513. Indeed, Lord Coke, in Doctor Bonham's case, 8 Co. 118, clearly intimates that an act of parliament contravening it would be void, as against common right.—See also 12 Mod. 687 ; 4 Term R. 71.

I am not unapprised of the fact, that, in an opinion delivered some four years since by Lord Langdale, Master of the Rolls, in the case of the Grand Junction Canal Company v. Dimes, 12 Beavan 63, a qualification, or rather an exception, to the common law rule which we have mentioned, was held to obtain in a case where the judge's refusal to act in the cause would amount to a denial of justice, as it was said.

In that case, the plaintiff had filed a bill in the Vice Chancellor's of England court, to enjoin the defendant from obtaining possession of certain land, claimed by the company upon equitable circumstances not necessary now to be named. The case was heard before the V. Chancellor, and resulted in favor of the company, and was re-heard before Lord Chancellor Cottenham, and by him affirmed. Dimes, the defendant, afterwards discovered that the Lord Chancellor, at the time he made the decision, owned ninety shares of stock in the company, and proceeding upon the ground that the re-hearing was *coram non judice* and void, gave notice of motion before the Lord Chancellor to discharge the order made by him on the re-hearing, and to order the cost which he had paid to be restored to him; that the petition for re-hearing be restored to his Lordship's paper of re-hearings and appeals, and that the proper directions be given by issuing commissions or otherwise, for the trial of the appeal before the Master of the Rolls, assisted by two of the common law judges at Westminster.

The Master of the Rolls, at the request of the Lord Chancellor, heard the motion, and overruled it, at the same time recognizing the validity and importance of the general rule, that no one could be a judge in a cause in which he was interested; yet he maintained that there might arise cases where there would be a failure of justice from the refusal of a judge to sit, and this he considered a greater evil than the departure from the fundamental rule. This view is predicated upon a *dictum* in Great Charte v. Kennington, 2 Stra. 1173; but is certainly opposed to all the adjudged cases both in this country and in England, so far as my researches extend.

The departure from the rule, while it might meet the justice of the particular case, might poison ,and tend to corrupt the very fountains of it in its general administration. It were greatly better, in my opinion, to leave such cases to be provided for by legislative enactment, than to make shipwreck of principle to meet them. But, as the case before us calls for no opinion upon the point involved in that decided by the Master of the Rolls, it is left by this court an open question.

Aside, however, from the provisions of the common law, our statute meets such cases, and declares " that no judge of probate shall act upon the determination of any cause or proceed-

ing, or take jurisdiction of any matter, in which he is interested, or related to either party, by consanguinity or affinity, or in which he shall have been counsel, executor, administrator or guardian, unless by consent of the parties concerned; but in such cases, the cause or proceedings shall be commenced, or transferred, as the case may be, to the Circuit Court of the proper county, and said court shall take jurisdiction and proceed therein as the Probate Court might have done."—Acts of 1849–'50 p. 36 § 40.

To constitute such interest as will disqualify the judge, within the meaning of this section, from proceeding, it is not necessary that he should be a party. It is sufficient if he is in anywise interested in the subject matter.

Our statute is not unlike that of Pennsylvania upon the same subject; and in that State it was held, that, "where the judge of probate had a valid claim against the estate of a deceased person, but had determined in his own mind not to enforce it, and exercised jurisdiction over the estate by granting letters of administration, he was interested as a creditor of the estate, and the grant of administration was void for want of jurisdiction; and that it was not rendered valid by the circumstance that no exception was taken to his jurisdiction."—See Sigourney v. Sibley, 21 Pick. Rep. 101; See also 5 Barb. Sup. Ct. Rep. 607; 3 Cush. Rep. 352; 3 Coms. Rep. 547; 2 Toml. L. Dic. 285.

These authorities may suffice to show that, if the recognizance was not void upon which Judge Wooley was bound, he was interested, and all his action in the premises was *coram non judice* and void.

We come, then, to the inquiry, was the recognizance binding upon him?

The statute declares that the County Court, at the next term to which the justice is required to bind the party to appear, "shall have full and complete cognizance and jurisdiction of said charge of bastardy." Now it is most improbable that the legislature intended the County Court should be ousted of its jurisdiction, in the event the defendant was not tried at the first court, for this construction would deny the parties concerned the right, under any circumstances, to a continuance. If, however, the court has power over the cause to continue it, and has no

power to secure the attendance of the defendant, so as to make him amenable to its judgment, the object which the legislature had in view, in requiring the justice to take a bond with security, conditioned for his appearance at the next County Court, and in the mean time to be of good behaviour, entirely fails ; for, if the bond taken by the justice extends beyond the first court to which it is returned, the securities may have failed, so as to make it worthless.

We are of opinion, however, that it was competent for the County Court to take a recognizance from the party, as necessary to carry out the intention of the legislature, and as incident to the plenary jurisdiction conferred on it over the subject matter. The condition of the recognizance should not, however, go beyond the securing of the defendant's personal appearance and for his good behaviour. His appearance was necessary to enable the court to carry out and render effectual its jurisdiction, in compelling him to enter into bond for the payment of the provision to be made for the support &c., of the bastard, as provided in the fourth section, (Clay's Dig, p. 134) and hence is deducible from the statute. As to his good behaviour, the judge, being a conservator of the peace, might well superadd this condition.

But the obligation before us is to appear " from day to day and from term to term," and to abide the final determination of the court. So far as it secures the appearance of the defendant we think it is good, and the court had power to take it.—See 18 Vin. Abr. 163 et seq.; 1 Chitty's Cr. L. 90 ; Jac. L. Dic. "Recognizance." If the superadded condition creates any additional obligation, it is void, but the recognizance is valid as to the remaining obligation.—Home v. The State, 1 Ala. Rep. 110.

We conclude that the recognizance was not void—that it was well taken for the appearance of the party from term to term, and consequently Judge Wooley had such interest as to render him incompetent to preside at the trial. His action in the matter being void for want of jurisdiction, it follows that the circuit judge committed an error in repudiating the cause upon demurrer to the petition.

We entertain no doubt but that a *mandamus* was the proper remedy to compel the transfer of the cause. In judgment of

law, the cause was still pending in the Orphan's Court, its decision being a nullity.

Let the judgment be reversed, and the cause remanded.