# WILSON vs. WILSON.

36  655
f124 483

[FINAL SETTLEMENT OF GUARDIAN'S ACCOUNTS.]

1. *Incompetency of probate judge from interest.*—Where the probate judge is one of the sureties on an administration bond, he is incompetent from interest to preside on the settlement of the administration, or to make any order affecting the liability of the administrators under their bond; and if one of the administrators is also the guardian of the sole distributee of the estate, and the administration has never been settled, he is also incompetent to preside on the settlement of the guardian's accounts; and if the guardianship has never been settled, although the guardian has been removed, he is equally incompetent to preside on the settlement of the accounts of the succeeding guardian, who is sought to be charged with negligence in failing to collect from his predecessor assets belonging to the estate of his ward.

2. *Jurisdiction of circuit court, and of register in chancery, in causes transferred from probate court.*—The jurisdiction of the circuit court under the act of 1850, (Session Acts 1849–50, p. 36, § 40,) and of the register in chancery under the Code, (§§ 560, 1910–12,) in causes transferred from the probate court on account of the incompetency of the probate judge, is special and limited; consequently, the record in a transferred cause must affirmatively show the jurisdiction of the court to which the transfer is made.

3. *Same.*—If the record in a transferred cause recites the jurisdictional fact which authorized the transfer, the recital is conclusive in a collateral proceeding, and the validity of the subsequent orders and decrees cannot be impeached on account of irregularities; but a simple recital of the legal conclusion, that the probate judge "is incompetent," without stating the fact from which the incompetency results, is not sufficient to support the jurisdiction.

APPEAL from the Probate Court of Shelby.

IN the matter of the final settlement of the accounts and vouchers of John B. Wilson, as guardian of Martha J. Wilson, his ward. Martha J. Wilson was the sole distributee of the estate of H. H. Wilson, her deceased father, who died, intestate, in 1841. In September, 1841, the orphans' court of Shelby appointed John W. Roper and Benjamin F. Randall, as administrators of the estate of

said H. H. Wilson, and accepted and approved their official bond, with Samuel Brasher, J. B. Wilson, and J. M. McClanahan, as sureties. On the 11th October, 1841, said Benjamin F. Randall was also appointed by said orphan's court, as guardian of said Martha J. Wilson; gave bond, with D. E. Watrous and A. J. Wells as sureties, and entered on the discharge of his duties as such guardian. John W. Roper died in 1846, before there had been a final settlement of the joint administration of himself and Randall on the estate of Wilson; and Joseph Roper, D. N. McClanahan, and Mrs. E. M. Roper, duly qualified as executors and executrix of his last will and testament. In 1849, Randall, as surviving administrator, and the executors of Roper, were cited by the orphans' court to settle the administration of said Randall and Roper on the estate of said Wilson; and on the 16th July, 1850, before the Hon. J. M. McClanahan, probate judge, this settlement was transferred to the circuit court; the record reciting, "the judge of this [probate] court being incompetent to make said settlement." On the same day, the application of Randall's sureties to require him to give a new bond was also transferred to the circuit court; the record containing a similar recital as to the incompetency of the probate judge.

In the circuit court, at its September term, 1851, on final settlement by Roper's executors of their testator's administration on the estate of H. H. Wilson, a decree was rendered against said executors, in favor of B. F. Randall, as guardian of Martha J. Wilson, for $1365; and it was further ordered, that the settlement of Randall's administration on said estate be remanded to the probate court. This entry contains the following recital: "The judge of the probate court of said county, from incompetency to settle this adminstration, (he having been one of the executors of John W. Roper's last will and testament,) having transferred this settlement from the probate court to this court, the same came on to be heard," etc. On the same day, the circuit court made another order, discharging McClanahan and Brasher from their liability as

sureties on Randall's bond as guardian, and accepting from him a new bond, with other sureties.

In the probate court, on the 4th August, 1853, before Judge McClanahan, the settlement of Randall's guardianship, and an application for the revocation of his letters of guardianship, were transferred to the register in chancery; the order reciting, " the judge of this court being incompetent to try the same." On the same day, the final settlement of Randall's administration on the estate of said Wilson was also transferred to the register in chancery; the order containing this recital, " The judge of this court being incompetent to try the issues and pass upon said settlement." On the 10th January, 1854, before the register in chancery, a decree was rendered against Randall, on final settlement of his accounts and vouchers as administrator, in favor of Martha J. Wilson as sole distributee, for $7,755; and on the 18th June, 1855, on final settlement of his accounts as guardian, a decree was rendered against him for $8,813 26, being the amount of the decree against him as administrator, with interest thereon. In each case, the entry recites, that the register is " sitting as judge of probate under the Code of Alabama, the judge of probate being incompetent in this case, and the case being transferred." Divers other proceedings were had before the register in chancery, in the matter of the guardianship; but the record is so confused that it is impossible to state them accurately, and at the same time intelligibly.

In the probate court, before Judge McClanahan, on the 31st October, 1856, a citation was ordered to issue against Randall, commanding him to appear and show cause why his letters of guardianship should not be revoked; and at the November term, 1856, he having failed to appear in answer to the citation, his letters were revoked, and he was ordered to make a final settlement of his accounts on the 2d Monday in December then next. On the 13th November, 1856, John B. Wilson was appointed by said probate court, as guardian of said Martha J. Wilson; gave bond, and duly qualified. In August, 1857, said Wilson having failed to give a new bond, on the requisi-

tion of his sureties, his letters of guardianship were re-
voked, and he was cited to make a final settlement of his
accounts on the 2d Monday in September, 1857. The
settlement was brought to a hearing at the March term,
1858, of the probate court; and the case is brought to
this court by appeal from the decree of the probate court.

Before the settlement of the accounts was commenced,
the guardian filed written objections to the competency
of Judge McClanahan to preside on the settlement, "on
the ground that he was one of the sureties of Benjamin
F. Randall on his official bond as administrator of H. H.
Wilson, deceased; and that the assets of said estate,
which had come to the hands of said Randall as adminis-
trator, had never been paid over to any one authorized
by law to receive them." In support of his objections,
the guardian read in evidence the order appointing said
Randall and Roper as administrators of said Wilson, to-
gether with their official bond, and all the proceedings
had in the probate court up to the time when the adminis-
tration was transferred to the register in chancery; also,
the various proceedings of the probate court, in the matter
of Randall's guardianship, up to the time when it was
transferred to the register in chancery, and all the orders
and decrees made by the register in connection with the
settlement of the administration and guardianship. To
rebut this evidence, the ward then read in evidence the
record and proceedings of the circuit court of Shelby, in
the matter of the settlement before that court of Roper's
administration on said Wilson's estate. To the admission
of this evidence the guardian objected, "because it was
illegal and irrelevant, and because said circuit court had
no jurisdiction to make said orders and decrees." The
court overruled the objections to the evidence, and to the
competency of the presiding probate judge; and to each
of these decisions the guardian excepted.

The ward sought to charge the guardian with the
amount of the decree rendered in her favor, by the regis-
ter in chancery, on the 18th June, 1855, on the final set-
tlement of Randall's guardianship, and, for this purpose,
offered in evidence the proceedings had before the or-

phans' and probate court, and before the register in chancery, in the matter of Randall's guardianship. The guardian objected to the admission of these records as evidence, "because said orphans' or probate court of Shelby had no jurisdiction to appoint a guardian for Martha J. Wilson, and the record did not show that it had jurisdiction; because the register in chancery had no jurisdiction of said guardianship, and was not authorized to make any valid order or decree therein; because the order transferring said guardianship to the register in chancery conferred no jurisdiction on him, and because said proceedings were wholly null and void." The court overruled these objections, and permitted the record to be read, and also charged the guardian with the amount of said decree; to each of which rulings and decisions the guardian excepted.

The rulings of the probate court above stated, with numerous other decisions to which exceptions were reserved by the guardian, are now assigned as error.

J. R. John, with Brooks & Garrott, for appellant.

S. Leiper, with John T. Morgan, contra.

STONE, J.—In the present case, we have to deal with two guardianships, two administrations, one suit in chancery, two or more transfers from one court to another, and several renewals of bonds. Hence, if the record had been made out with the strictest regard to method, the questions presented would necessarily have been complicated. The complication of the case, however, is much increased, by a very great disregard, in the preparation of the record, of the proper connection of both subjects and dates. We forbear to particularize, but feel justified in saying, that should another record come before us in the condition in which we find the present one, we will, ex mero motu, reject the record, without costs for its preparation, and require a correct one to be made by the officer on whom the duty rests.

The direct questions presented for review in the present record, arose on the final settlement of John B. Wilson,

the appellant, of his guardianship of the person and estate of Martha J. Wilson, the appellee. Several preliminary questions, however, arose. Among them is the charge, that the presiding judge of the probate court of Shelby was interested in the subject-matter of the settlement, and therefore incompetent to try the cause. To make out this interest, the appellant is forced to take, and does take another position—to-wit, that certain proceedings in the probate court, in the circuit court of Shelby, and before the register in chancery for that county, hereafter noticed, are void.

The claim of Miss Martha J. Wilson consists of moneys and effects in the hands of her former or present guardian, or in the hands of the administrators of the estate of her father, H. H. Wilson, from whose estate the property came. In 1841, Benjamin F. Randall and John W. Roper were appointed administrators of said H. H. Wilson's estate, and gave a joint bond; and the present probate judge of Shelby county, we suppose, became one of their sureties on said administration bond. Being, as we suppose, at one time bound as the surety of Randall and Roper, it follows that, unless he has been discharged as such surety, he is incompetent from interest to preside in any trial or controversy, the result of which will be to fix a liability on said administrators, or to discharge them from such liability. In such contest he has such an interest as not only disqualifies him from presiding, but would render any judgment pronounced by him void,—Act of 1850, Pamph. Acts, 36, § 40; Code, § 560.; State, ex rel. Claunch v. Castleberry, 23 Ala. 85; Heydenfeldt v. Towns, 27 ib. 423, 439.

All the orders and judgments had and rendered in this cause, since the first stages of the administration, and since the appointment of the first guardian for Miss Wilson, after noticed, have been during the official term of the present probate judge. It follows from the rule above laid down, that Judge McClanahan, if one of the sureties, was incompetent from interest to make any order, which affected the liability of the administrators, under their bond to which he was a surety.—Lyon v. State Bank,

1 Stew. 442, 463–4; Lister v. Vivian, 8 Porter, 375; Woodruff v. Bank, 4 Ala. 294; Bond v. Smith, 2 *ib*. 660; Earl of Derby's case, 12 Coke, 114; Dimes v. Grand Junction Canal Co., 16 Eng. Law & Eq. 63; Bank v. Fitzsimmons, 2 Bin. 454; Steamboat Company v. Livingston, 3 Cowen, 724; Underhill v. Dennis, 9 Paige, 202; Paddock v. Wells, 2 Barb. Ch. 331; Palmer v. Lawrence, 1 Sel. 389; Nettleton v. Nettleton, 17 Conn. 542; Hawley v. Baldwin, 19 *ib*. 585; Murphy v. Barlow, 5 Por. (Ind.) 230; Knight v. Hardeman, 17 Geo. 260; Pearson v. Hopkins, 1 Pen. (N. J.) 195; Ten Eyck v. Simpson, 11 Paige, 177.

In 1850, Mr. Roper having died, his representatives filed their account-current in the probate court, for final settlement of his administration. At the same time, certain of the sureties moved in said court that B. F. Randall, the other administrator, be required to renew his bond as administrator, and thus to discharge them. Notices of these applications were given; and the judge of probate, stating in his orders that he was *incompetent*, in the one case "to make said settlement," and in the other, "to adjudicate the same, and pass on said settlement," transferred both of said cases and questions to the circuit court for adjudication.

In the circuit court of Shelby county, at the fall term, 1851, said final settlement was taken up, and disposed of; the judgment entry reciting—"The judge of the probate court of said county, from incompetency to settle this administration, he having been one of the executors of said John W. Roper's last will and testament, and having transferred this settlement from said probate court to this court, the same came on," &c. A decree was thereupon rendered, in favor of said B. F. Randall, as surviving administrator, against the executors of John W. Roper, which, the record tends to show, was afterwards paid up.

At the same term, and in the same order, the circuit court took and approved a new administration bond from said B. F. Randall, with G. M. Randall, Lewis Bowdon, and J. A. Simpson, as sureties; and discharged J. M. McClanahan and Samuel Brasher as sureties of said Randall

on his administration bond. These orders bear date 13th September, 1851.

The two orders last noticed—the settlement of John W. Roper's administration, and the taking of the new bond, with the discharge of the sureties, McClanahan and Brasher—were made under the act approved Feb. 11th, 1850.—Pamph. Acts, 36.

The authority of the circuit court, under the act of 1850, and of the register in chancery, under section 560 of the Code, to adjudge controversies which belong of right to the probate court, is of the class called limited and statutory. To uphold the jurisdiction, the record must affirmatively show the right of the court to proceed in the given case.—Lister v. Vivian, 8 Porter, 375; Woodruff v. Bank, 4 Ala. 292; King v. Shackleford, 13 ib. 435; Talliaferro v. Brown, 11 ib. 702; Hall v. Wilson, 14 ib. 295; Butler v. Foster, ib. 323; Reynolds v. Reynolds, 11 ib. 1023; Willis v. Willis, 9 ib. 330; Brazeale v. Brazeale, ib. 491, 496; Cloud v. Barton, 14 ib. 347; Taliaferro v. Bassett, 3 ib. 670; Robinson v. Steele, 5 ib. 473; Clarke v. West, ib. 117; Lambeth v. Garber, 6 ib. 870; Bishop v. Hampton, 15 ib. 761; Bond v. Smith, 2 ib. 660; Driver v. Hudspeth, 16 ib. 348; Jenkins v. Jenkins, 16 ib. 693; Willis v. Willis, ib. 652; Croft v. Ferrill, 16 ib. 351.

The questions arising on the orders made in the circuit court of Shelby, came up collaterally in the trial of this cause in the court below; and hence, if that court acquired jurisdiction of the questions, we need not inquire whether the after proceedings were regular, or free from error. Irregularity of proceedings could only be noticed on direct appeal; want of jurisdiction would render the proceedings void.—Wyman v. Campbell, 6 Porter, 219; King v. Kent, 29 Ala. 542; authorities collected in Hunt v. Ellison, opinion of Stone, J., 32 Ala. 193; Key v. Vaughn, 15 Ala. 497; Willis v. Willis, 16 ib. 652; Davis v. Davis, 10 ib. 299.

The order of transfer to the circuit court, the validity of which we are considering, was made under the 40th section of the act of 1850, which, after declaring that no judge of probate shall act upon the determination of any

cause or proceeding, &c., in which he is interested, &c., proceeds to direct that, in such cases, the cause or proceeding shall be commenced, or transferred, as the case may be, to the circuit court of the proper county, &c. In the present case, the circuit court recited in its judgment entry, that the judge of probate was incompetent to settle this administration, he having been one of the executors of said John W. Roper's last will and testament. We can not, in this proceeding, inquire whether this recital is true or false. It was a judicial ascertainment of the fact necessary to give the court jurisdiction; and inasmuch as, under the act of 1850, the proceedings may be commenced in the circuit court, when the probate judge is interested, the recital gave the circuit court jurisdiction.—See Hamner v. Mason, 24 Ala. 480; King v. Kent, supra; Heydenfeldt v. Towns, 27 Ala. 431; Hamilton v. Williams, 26 ib. 584. Hence, we need not in this place inquire whether the order of transfer made by the probate court was or was not sufficient.

It results from what we have said, that the orders and decrees made by the circuit court were not void, and that on this settlement they were conclusive. This includes the final settlement of Roper's administration, the new bond taken from Randall, and the discharge of the sureties.

Looking into the record, we suppose that the recital that the probate judge was one of the executors of John W. Roper's will is an error. He seems to have been one of the sureties on the bond of Randall and Roper as administrators of H. H. Wilson's estate. This as effectually disqualified him from presiding on the settlement of either of said administrations, as did the cause recited by the circuit court. This disqualification extended farther, perhaps. The discharge of the sureties of the first administration, or first guardianship, did not necessarily absolve them from liabilities incurred before their discharge.—See Williams v. Harrison, 19 Ala. 277, 284–5; Hamner v. Mason, supra; Carroll v. Moore, 7 Ala. 615; Phillips v. Brazeale, 14 ib. 746; Chilton v. Parks, 15 ib. 671. Serious questions may, and probably will, arise in the settlement of Benjamin F. Randall, as administrator of the estate of

H. H. Wilson, deceased, and of his guardianship of Martha J. Wilson, which will, directly or indirectly, affect his sureties on the first administration bond. We confess ourselves the advocates of the doctrine, that judicial officers should abstain from the trial of causes in which they have the smallest pecuniary interest. Nothing so upholds civil society, so challenges public confidence, as a pure and incorruptible judiciary.—Hawley v. Baldwin, 19 Conn. 585; Ten Eyck v. Simpson, 11 Paige, 177; State, ex rel. Claunch v. Castleberry, *supra*.

In the present case, assuming that the probate judge was one of the sureties on the first administration bond, (of which fact the identity of name is the only evidence,) we think he rightly declined to entertain jurisdiction of the settlement of the administration, and of the settlement of Randall's guardianship, which necessarily brought up the question of the discharge of the administrators. In other words, Randall's liability as guardian, and the extent of it, depended on the extent to which he had administered on the estate in his hands, and had transferred the funds from the administration to the guardianship. Davis v. Davis, 10 Ala. 299; Childress v. Childress, 3 *ib.* 752; McLane v. Spence, 6 *ib.* 894; Duffee v. Buchanan, 8 *ib.* 27; Purdom v. Tipton, 9 *ib.* 914; King v. Shackleford, 13 *ib.* 435; Williams v. Harrison, 19 *ib.* 277, 284–5.

The subsequent orders of transfer of the settlement of Randall's administration, and of his guardianship, were made under the provisions of the Code, which read as follows: "§ 560. No judge of any court, chancellor, county commissioner, or justice, must sit in any cause or proceeding in which he is interested, or related to either party within the fourth degree of consanguinity or affinity, or in which he has been of counsel, without the consent of the parties, entered of record, or put in writing if the court is not a court of record." Sections 1910, 1911, 1912, of the Code, point out the mode of proceeding in such cases.

The orders of transfer in these cases, made by the judge of probate, simply recite that the judge is incompetent, without stating any fact, or conclusion of fact, which

shows the incompetency. Incompetency to preside is a conclusion of law from given facts. If the order had recited, that the judge was interested in the settlement, had been of counsel, &c., this would have brought the case directly within the statute, and would have supported his conclusion that he was incompetent. There is noth_ing in the proceedings before the register which aids this imperfect certificate of the judge of probate. The only mention there made of the subject is, that the judge of probate is incompetent, and that he, the register, is sitting for the judge of probate. This is insufficient, under the rule above laid down, to sustain a limited, special, statutory jurisdiction.—Butler v. Butler, 11 Ala. 668; Hartley v. Bloodgood, 16 *ib.* 233; Cullum v. Branch Bank, 23 *ib.* 797; Keiffer v. Barney, 31 *ib.* 193; Clark v. Gilmer, 28 *ib.* 285; Dow v. Whitman & Ousley, at present term.

From the principles above stated it results, that neither the administration of the said Randall, nor his guardianship for Miss Wilson, has ever been settled, because the register in chancery never acquired rightful jurisdiction of said settlements.

It does appear, however, that Mr. Randall was removed as guardian, after proper notice, by an order of the probate court, made at the November term, 1856. This order appears regular, and there is nothing in the record which shows the probate judge disqualified by interest or other cause from making the order. It also appears that John B. Wilson was regularly appointed guardian for Martha J. Wilson, by the judge of probate, and his bond approved Nov. 17th, 1856; and that his letter of guardianship was revoked by the same authority, at the August term, 1857. It is thus shown that John B. Wilson remained guardian for Miss Wilson, between eight and nine months. It is not necessary we should inquire in this case what diligence he did or did not employ in collecting, or attempting to collect, the property of his ward. See Williams v. Harrison, *supra.* It is manifest that much of the evidence against him on the trial of this cause, consisted of proceedings before the register, which were void; and that without those proceedings, the evidence

43

did not justify the decree which was rendered. Hence, we deem it unnecessary to consider any other questions.

Whether the present appellant has incurred any liability, by failing to recover the property or moneys of his ward, while he was her guardian, we do not determine. All we decide is, that the evidence in this record does not support the decree; and that in the condition in which the administration of H. H. Wilson's estate now stands, the present probate judge of Shelby county, if he was a surety on the first administration bond of Randall and Roper, is incompetent to preside on this settlement.

The decree of the probate court is reversed, and the cause remanded.

A. J. WALKER, C. J., not sitting.