COUCH AND ROBINSON *vs* CAMPBELL et al.

1. The second section of the statute of eighteen hundred and eighteen, entitled "an act concerning judicial proceedings," authorises the county court to proceed, on petition and citation to order the sale of land belonging to the estate of a deceased person, when the estate, or those entitled to inherit the same, would be less injured by a sale of the real property than slaves.

2. The jurisdiction of the Orphans' court over the real estate of an intestate is put in full exercise, when that court makes an order for the issuance of a citation to the heirs, to shew cause why the same should not be sold, upon the suggestion of the administrator, for the payment of debts due by the intestate.

See the case of Wyman *vs* Campbell, page 219 of this volume.

Error to the Circuit court of Montgomery.

Trespass to try title. At the March term, eighteen hundred and thirty-five, of said court, David Campbell, Eliza Campbell, Emily Fountain, and Robert Fountain, her husband,—also, Archibald Campbell, Maria Campbell, and Mary Campbell, who sued by their next friend, David Campbell, being infants, under the age of twenty-one years, declared against Edward W. Couch and Tod Robinson,—for that, the plaintiffs, on the first day of December, Anno Domini,

eighteen hundred and twenty-two, were seized in their demesne as of fee, of the messuage or close of land, situate in the town of Montgomery, in the county aforesaid, described as the Eastern two-fifths part of lot number three, on the South side of Monroe street, and of lot number three, on the North side of Market street, measuring on the front of each street, twenty feet, and running from street to street; and being so seized as aforesaid, the said defendants, on the fifth day of February, eighteen hundred and twenty-three, entered upon the said premises, and ejected and expelled the plaintiffs from the same, and the same had detained from thence hitherto, to the great wrong and injury of the plaintiffs, and against the peace and dignity, &c.

And for that also, on the fifth day of February, Anno Domini, eighteen hundred and twenty-three, the said plaintiffs were seized as of fee, of that parcel of land in the town of Montgomery, county aforesaid, known as the eastern two-fifths of lot number three, on the South side of Monroe street, and the corresponding portion of lot number three, on the North side of Market street, measuring twenty feet on the front of said lots, and running from street to street, so as to form an oblong square. And being so seized, in manner and form aforesaid, the said defendants afterwards, to wit, on the first day of January, eighteen hundred and thirty-five, entered upon the said lands, and the said plaintiffs ejected and expelled with force and arms, and the same had detained from thence hitherto, to the great wrong, &c., and against the peace, &c.

To this declaration defendants pleaded *non culpabilis* and *liberum tenementum*, and that the premises were sold and conveyed by an order of the County court of Montgomery county, by the administrator of Archibald Campbell, deceased, and that the same were bought by Benjamin Bradshaw, and a deed regularly

made to him, by said administrator.    Upon the two first pleas issues were taken, and to the last, plaintiffs replied *nul tiel record*.

And at the March term, eighteen hundred and thirty-six, a jury came, who being elected, &c., on their oaths said, they found the eastern two-fifths part of lot number three, on the north side of Market street, in the town of Montgomery, Alabama, the premises described in the declaration of plaintiffs, to be the property of the plaintiffs, and that the defendants were guilty of the trespass, and assessed the plaintiffs damages at one cent : it was therefore considered by the court, that the plaintiffs should have a writ to obtain possession of said premises, and that they should recover of the defendants the damages assessed, together with their costs, &c.

The bill of exceptions stated, that plaintiffs proved that a patent issued from the government of the United States to John Falconer, and a deed from him to Archibald Campbell, the ancestor of the plaintiffs, for the premises sued for,—and that the defendants were in possession at the time the suit was brought.    The defendants then produced and read a petition to, and sundry orders of, the County court, which were made a part of the bill of exceptions.    They also read in evidence, advertisements published in a newspaper, in Montgomery, giving thirty days notice of the time and place of the sale of the premises in question, and read a deed for them, made under the said orders, by A. Finley, the administrator of Campbell, to Benjamin Bradshaw, under whom the defendants claim title. They further proved by the administrator, (he having been examined as a witness by the plaintiffs, by whom they had proved that they were minors at the time of the sale,) that the sale was *bona fide* and fair : that the purchase money had been punctually paid, and was by him applied, according to law, to the purposes of said estate,—that he had ceased to be admi-

nistrator of said estate, and had made a final settle-
ment thereof.

The Court charged the jury, that the Supreme
court had determined the County court to be a court
of special and limited jurisdiction, and all the facts
necessary to give it jurisdiction, must appear on the
record. Two points had been taken by plaintiffs,—
first, that the plaintiffs had no notice of the pendency
of the proceedings in the County court : second, that
the bond required of the administrator, faithfully to
account for the proceeds of the sale, was not given.
The court charged, that the jury must find that notice
was given to the heirs of Campbell, before they would
be affected by the record,—and that the recital in the
order of the county court, that all parties interested
had had due notice, was not sufficient evidence of the
fact, that notice had been given, to make them parties
to the record. The court charged, that the second
point was equally well taken. If the jury found that
no bond had been given in the case—although a faith-
ful administration of the proceeds may have been ren-
dered—yet the rights of the plaintiffs had not been
divested. To all of which defendants excepted, &c.

The petition to the County court, appended to the
bill of exceptions, stated to the County court, that the
administrator of Archibald Campbell had made sale
of all the personal estate of the intestate, except the
negroes, which were of great advantage to the heirs,
as the money applied from the hire, was appropriated
to the support of the heirs; that the money arising
from the sale of the personal estate, was not sufficient
to pay the debts; that the lots brought in nothing :
that a sale of the negroes would injure the heirs, and
a sale of the lots would enable him to pay the debts,
without being an injury immediately to the heirs.—
He therefore prayed for an order of sale of the lots—
a citation to the heirs, &c.

On the hearing of the petition, citations were or-

dered to issue to all the persons interested, to shew cause why an order should not be granted.

And at December term of the Orphans' court, eighteen hundred and twenty two, it appeared to the satisfaction of the court, that the parties interested, had due notice to appear at that term, and shew cause why the real estate of Archibald Campbell, deceased, should not be sold, in preference to the slaves, and had failed to appear. It also appeared, to the satisfaction of the court, that a sale of the real estate would be less injurious to those interested, than a sale of the slaves:

It was, therefore, ordered that the administrator sell the real estate, (including the lot for which the action was brought,) to satisfy the debts against the estate. It was further ordered, that the administrator return the amount of the sale within three months, to the court.

And on the fifth day of February, eighteen hundred and twenty-three, the administrator returned, under oath, that he had, on the same day, sold to Benjamin Bradshaw, the highest bidder, four-fifths part of lot number three, on the North side of Market-street, and four-fifths part of lot number three, on the South side of Monroe street, all in the town of Montgomery, belonging to the estate of Archibald Campbell, deceased,—which return was received and placed on the records of the court.

And at the present term of the Supreme court, the plaintiffs in error, assigned the matters contained in the bill of exceptions, for error, and prayed that the judgment below, might be reversed, &c.

*Dargan and Thorington*, for the plaintiffs in error.
*Campbell*, contra.

COLLIER, C. J.—This was an action of trespass to try titles, brought by the defendants in error against

the plaintiffs, in the Circuit court of Montgomery. The pleas were, "not guilty, *liberum tenementum*," and a special plea, that title was acquired by purchase of an administrator, under an order of sale, made by the County court of Montgomery.

On the trial, it appeared that the administrator of the estate of the ancestor of the defendants in error, petitioned the County court for an order to sell certain real estate of his intestate, (of which that now in controversy is a part,) upon a suggestion, that it was necessary to sell either slaves or land, in order to pay the debts of the intestate, and that the heirs would be less injured by a sale of the latter, than the former.— On the exhibition of the petition, the judge of the County court directed citations to issue to all parties interested, to appear, &c. and shew cause, if any there was, why the land should not be sold.

At the return of the citation, an entry was made, reciting, that the parties interested had had due notice, and that they failed to shew cause as required : whereupon the court being satisfied of the truth of the allegation, that the heirs would be less injured by a sale of the land, than the negroes, ordered that the real estate described in the petition, be sold by the administrator, and due return be made thereof.

The judge of the Circuit court, in his charge to the jury, assumed, that the proceedings of the County court might be collaterally impeached, and that, unless certain facts, such as the execution of a bond, by the administrator, faithfully to account for the proceeds of the sale, &c. appeared of record, the title of the heirs was not divested.

The only question which we need now to decide, is whether the County court had jurisdiction of the case stated in the petition. The second section of the statute of eighteen hundred and eighteen, entitled "an act concerning judicial proceedings," expressly authorises the County court to proceed, on petition

and citation, to order the sale of land belonging to the estate of a deceased person, when the estate, or those entitled to inherit the same, would be less injured by a sale of the real property, than the slaves. It is clear that the jurisdiction was put in full exercise, if not earlier, at least when the court recognised the petition and made its order for the issuance of citation. This conclusion is fully sustained by the opinion of this court, in *Wyman vs Campbell;* and consequently, a further examination of this case is rendered unnecessary.

The judgment is reversed and the cause is remanded.

GOLDTHWAITE, J., not sitting.