## SAMUELS v. FINDLEY.

1. Where a decree has been made by the Orphans' Court directing an executor to convey land, which his testator in his lifetime had sold, and agreed by bond to make titles for, the jurisdiction of that Court attaches upon the filing of a petition setting out the sale, the agreement by bond, &c., to convey, the death of the obligor, and the grant of letters by the Court to which the petition is made; and such decree cannot be collaterally impeached when the jurisdiction has attached, though there may be error in the proceedings.

2. An admission that the damages for the mesne profits shall be entered at a certain sum, if the plaintiff is entitled to a judgment, dispenses with proof that the defendant was in possession at the time of suit.

Writ of error to the Circuit Court of Benton.

TRESPASS to try title by Findley against Samuels. The declaration is in the usual form, and was demurred to by the defendant, who after his demurrer was overruled, pleaded the general issue.

At the trial the defendant demurred to the plaintiff's evidence, and it was admitted the plaintiff was entitled to seven-

ty-five dollars as *mesne profits*, if he should have a judgment. The evidence was—1. A patent dated 5th August, 1837, conveying title to John D. McReynolds, for one of the eighty acre tracts of land sued for. 2. The receiver's receipt of the proper land office for the payment by the said McReynolds for the other eighty acre tract of land sued for, dated the 1st of December, 1836. 3. Proof that McReynolds died in 1837, and that one Lloyd was duly qualified as the executor of McReynolds' last will. 4. A petition made by one McCampbell filed in the County Court of Benton county, the 15th September, 1840, setting out that McCampbell, on the 15th February, 1837, had purchased of McReynolds both the eighty acre tracts here sued for, for a sum of money paid ; that McReynolds then executed to him a bond for titles, obliging himself to make titles to the petitioner for said lands, as soon as patents should be issued to McReynolds for the same. The bond is made an exhibit to the petition, which asserts that McReynolds then transferred the certificates of entry to the petitioner; one of which he had returned to the land office, and received the patent in lieu of it; and the other of which he would present at the hearing, if in the meantime the patent should not be issued. It alledges the death of McReynolds—the appointment and qualifying of Lloyd as his executor—and states that McReynolds left at his death, children and heirs at law, whose names are set out with the allegation that they are minors, under the age of fourteen years ; and that Sarah, his relict and widow, had died since the death of McReynolds. It prays that the proper notice may be given to the parties concerned, and that the executor of McReynolds may be decreed to make titles to the petitioner, agreeably to the condition of the said title bond.

5. An order of the County Court made at a special term, in September, 1840, setting out the substance of the petition, and directing that publication should be made in a newspaper named in the order, once a month for three months, requiring Lloyd and others, who might be interested to appear before that Court, on the 1st Friday in January, 1841, to show cause if any they could, why titles should not be decreed to McCampbell, according to the title bond. At the proper term, in January, 1841, the hearing of the petition was continued to 1st Friday of February. After this order, a third person filed

a bill in equity, and for a time enjoined the decree for title prayed by McCampbell, and after this injunction was dissolved he notified Lloyd of its dissolution, and that he should apply for an order to make titles on the 2d December, 1841. A final decree on the petition was rendered on that day, reciting the continuance under the injunction, and directing Lloyd as executor of McReynolds to execute titles to McCampbell, according to the bond of his testator. No proof was offered showing that any advertisement or publication had been made under the order upon the petition.

6. A deed executed by Lloyd as executor of McReynolds on the 27th December, 1841, conveying to McCampbell the lands in controversy, the same as those named in the decree.

7. A conveyance dated 4th of October, 1839, from McCampbell to the plaintiff for the same lands, with covenant of warranty.

The Court gave judgment for the plaintiff for the recovery of the lands described in the declaration, and also for seventy-five dollars damages.

The judgment upon the demurrer to the evidence is now assigned is error.

S. F. Rice, for the plaintiff in error, made the following points:

1. That the action of the County Court upon the petition of McCampbell was entirely void, and no title was acquired by the deed executed by Lloyd under the decree. 1. Because the petition was not sufficient to confer jurisdiction, as it is not shown by it, that McReynolds in his lifetime *did not* make the title. 2. Because when the petition was filed, no title was derivable according to the terms of the bond, it not being shown that patents for both tracts had issued. [Blann v. Grant, 6 Ala. Rep. 110 ] The petition is a substitute for a bill in Chancery, but was intended to give a summary remedy. It ought, therefore, to contain the same allegations as a bill. [Lacy v. Simpson, Minor, 33.]

2. The authority conferred on the County Court is a naked power, and therefore the publication in conformity with the order should have been shown. [Pope v. Hendon, 5 Ala. Rep. 433; Bonner v. Greenlee, 6 Ala. Rep. 411.]

3. This action can only be maintained against the tenant in possession, (Bonner v. Greenlee, 6 Ala. Rep. 411,) and here there is no proof that the defendant was in possession. The agreement is, that if the plaintiff is entitled to a judgment, he shall have a certain sum as *mesne profits*, but this will not cure the defect of proof in this particular.

Wm. B. Martin, contra—insisted that every question raised was governed by previous decisions of the Court.

GOLDTHWAITE, J.—Upon the principal point presented by this record, the decision in Wyman v. Campbell, 6 Porter, 219, is quite decisive. There it was held, that a decree of the Orphans' Court pronounced in a cause of which it had jurisdiction, could not be collaterally impeached, although sufficient error was apparent upon the proceedings to have reversed the decree. The only matter to be ascertained here, to bring this case within the influence of that decision, is, whether the jurisdiction of the County Court had attached.

Our statute provides, that when any person owning lands or tenements shall sell the same, and enter into bond, &c , to make titles, and shall depart this life without having made titles, in that case the person to whom such bond, &c. was given, his executors, &c., may petition the Orphans' Court of the county, where probate of the will of such deceased person was taken, or letters of administration granted, to compel the executors, &c., to made title agreeably to the bond, &c. The manner of giving information to those concerned, is by notice in some newspaper, once a month for three months, when the Court may, if they find the contract was fairly made, order the executors, &c., to make titles, as such, to the land, &c., sold by their testator, or intestate. [Clay's Dig. 157, § 38.] It is supposed by the counsel that it does not sufficiently appear from the petition, that the decedent was the owner of the land sold; and Simpson v. Simpson, Minor, 33, is relied on to sustain the position that such an averment is material. We should suppose there could be scarcely a stronger presumption of ownership, than the assuming to sell the land; but, however, the presumption from this may be, it otherwise, by the petition, sufficiently appears, that the land was purchased by McReynolds

of the United States, and that certificates of purchase were issued to him. The filing of the petition then, was the matter upon which the jurisdiction of the Court attached; it being therein shown, that a bond for titles had been executed, that the party was dead, and that administration upon his estate, or letters testamentary, were granted by the Court entertaining the petition. These are all sufficiently averred in the petition, and the inference is very strong that it also appeared that the condition of the bond had not been complied with, though if the inference was otherwise, the decree would only be erroneous, and not void. The period when the jurisdiction attaches was considered in Couch v. Robinson, 6 Porter, 262, and there held, to be in full exercise, under a similar statute, when the Court made the order for a citation to issue to the heirs. By analogy to that case, the jurisdiction here attached upon the order of publication. We think the decree of the Orphans' Court was rendered in a cause of which it had jurisdiction, and therefore it is unnecessary to go further, or ascertain it to be free from error.

2. No other inference can be drawn from the agreement or admission with respect to damages, than that the contest was with the proper person, and although no proof is set out in the demurrer to evidence, showing the defendant was in possession at the commencement of the suit, we are constrained to presume such was the fact, because he appears to contest the right of the plaintiff on the merits of the case to recover. If there had been a slip in this particular before the jury, and the case before them was contested on the merits, it would require but slight proof of possession to warrant a verdict. The admission found in the case would be sufficient for a jury, and consequently is so with a Court upon demurrer.

There seems to be no error in the record. Affirmed.