# KING vs. KENT'S HEIRS.

[ACTION BY HEIRS-AT-LAW TO RECOVER ANCESTOR'S LANDS SOLD UNDER ORDER OF ORPHANS' COURT.]

1. *Nature of proceedings in orphans' court for sale of decedent's realty.*— Proceedings in the orphans' court, for a sale of the real estate belonging to a decedent, are *in rem;* and therefore, when collaterally attacked, cannot be avoided for mere irregularities.

2. *Widow may file petition for sale.*—The widow of the deceased is a " party interested," within the meaning of the act of 1818, (Clay's Digest, 195, § 18,) and may therefore file the petition for a sale of lands.

3. *Description of lands in petition.*—A description of the lands by the numbers of the section, township and range " in the district of lands sold at Cahaba," sufficiently shows their location within the State of Alabama; since the court will take judicial notice of the fact, that Cahaba, and the lands within the district subject to sale at that place, are within this State.

4. *Allegation in petition that estate will be less injured by sale of lands than of slaves.*— Where the petition was in these words: " Your petitioner is satisfied that said estate would be less injured by a sale of the real estate described in the petition, than by a sale of the slaves belonging to the estate. If the slaves be sold to pay said debts, it will leave to the heirs a large amount of land, without any one to cultivate it; but if said lands be sold, it will leave to the heirs 170 acres, on which your petitioner resides, with a sufficient number of slaves to cultivate it; which is a matter of great importance to said minors, as well as your petitioner,"—*held,* that the averment, although it might not have been sufficiently certain on demurrer, was sufficient, when collaterally assailed, to sustain the jurisdiction of the court. (RICE, C. J., *dissenting.*)

5. *Allegation of necessity for sale.*—" Your petitioner further represents, that said estate is indebted to about the amount of $4,000, and that it would probably take the whole amount of the slaves of the said estate to pay the debts of the same," held a sufficient averment that a sale was necessary for the payment of debts.

6. *Statute not restricted to intestates' estates.*—The authority to order a sale of lands, under the act of 1818, is not restricted to the estates of intestates, but extends to the estate of any deceased person.

7. *Plea of not guilty in a real action.*—In an action for the recovery of lands, in the nature of an action of ejectment, the plea of not guilty (Code, § 2213) is equivalent to the consent rule, and is an admission of the defendant's possession at the commencement of the suit.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. GEO. D. SHORTRIDGE.

THIS action was brought by the appellees, as heirs-at-law of Robert F. Kent, deceased, against Edwin W. King, to recover certain lands, of which said Robert F. Kent, at the time of his death in 1840, was seized and possessed, and which were afterwards sold under an order of the orphans' court of Perry, and purchased by one E. F. King, under whom the defendant claimed. A transcript from the records of the orphans' court, showing the proceedings connected with the sale, was offered in evidence by the defendant; the material portions of which are as follows:

The petition is in these words:—" Your petitioner, Eliza Kent, widow of Robert F. Kent, deceased, would respectfully represent to your Honor, that said Robert F. Kent died seized and possessed of the following described tracts or parcels of land, to-wit: the N. W. quarter of section 23, the N. E. quarter of section 23, the N. E. quarter of the S. E. quarter of section 23, and the N. W. quarter of the S. E. quarter of section 23, all in township 18, range 8, in the district of lands sold at Cahaba; and that the said deceased left the following heirs, to-wit: Eliza, (your petitioner,) Frances, (now Frances Brown, wife of F. G. Brown,) above the age of twenty-one years, Robert F., John, Thomas P., Laura, and Alex. Kent, all minor children of said Robert F. Kent, deceased. Your petitioner further represents to your Honor, that said estate is indebted to the amount of about $4,000, and that it would probably take the whole amount of the slaves of said estate to pay the debts of the same. Your petitioner is satisfied that said estate would be less injured by a sale of the real estate described in the petition, than by the sale of the slaves belonging to the estate. If the slaves be sold to pay said debts, it will leave to the heirs a large amount of lands, without any one to cultivate it; but if said lands be sold, it will leave to the heirs one hundred and seventy acres, on which your petitioner resides, with a sufficient number of slaves to cultivate it; which is a matter of the greatest importance to said minor heirs, as well as your petitioner. She therefore asks your Honor to make the necessary orders, under the statute in such case made and provided, to have said lands sold to pay the debts of said estate, and your petitioner will, &c."

The record does not show when this petition was filed ; but it shows, by a memorandum written at the foot of the petition, that the administrator of the deceased acknowledged service and notice, and joined in the prayer of the petition, and that the guardian *ad litem* of the minor heirs denied the allegations of the petition.

On this petition, at a special term of said orphans' court held on the 15th January, 1848, the following decree was rendered :—"This day came Eliza Kent, widow of Robert F. Kent, deceased, and filed her petition, alleging, that said testator died seized and possessed of the following tracts or parcels of land," [describing them as in the petition,] " and that testator left the following heirs," &c. ; " and further alleging, that said estate is indebted to the amount of about $4,000, and that it would probably take the whole of the slaves of said estate to pay the debts of the same, and that said estate would be less injured by a sale of said real estate above described, than by a sale of the slaves—that if the slaves were to be sold to pay said debts, it would leave the heirs a large amount of lands, without hands to cultivate the same, &c.; and prays that an order be granted authorizing the same. It is ordered that F. G. Brown be, and he is hereby, appointed guardian *ad litem* of the aforesaid minors ; and it appearing to the court that said Brown, guardian *ad litem*, has acknowledged due service of notice, and that he has, in writing now here on file, and signed by him, denied the allegations of said petition ; and it further appearing to the court, from proof regularly taken in the matter of said petition as in chancery cases, and filed in the court, that it is necessary to make sale of the aforesaid real estate described in said petition, as therein alleged ; and that W. W. Stokes, administrator *de bonis non*, with the will annexed, of said Robert F. Kent, deceased, has had due notice of the filing of said petition, and hereby waives the notice required by law, and joins in the prayer of said petition ; and that said guardian *ad litem* also waives the legal notice,—it is therefore ordered, adjudged, and decreed, that the prayer of the petition be granted, and that said W. W. Stokes, administrator *de bonis non* of said estate, be, and he is hereby, appointed and authorized to sell said lands described in said petition, as herein set

forth, at public auction," &c.  " It is further ordered, that said administrator make a report of his proceedings under this order and decree, to this court, in the manner and time prescribed by law."

The transcript also showed the administrator's report of sale, its confirmation by the court, and a decree that he convey to the purchaser ; and the administrator's deed was introduced by the defendant.

It further appears from the bill of exceptions, that said Robert F. Kent, in his lifetime, executed a will and testament, which was admitted to probate after his death, but which was attested by only two witnesses. " There was no evidence before the jury showing, or tending to show, that the defendant had ever had possession of said lands, or of any part thereof, or that he had committed any trespass thereon ; but as to the defendant's possession the plaintiffs relied exclusively on his plea of not guilty." Many questions were reserved concerning the admissibilty of evidence, which requires no particular notice.

The court gave the following instructions to the jury :

" 1. That Eliza Kent, the widow of said Robert F. Kent, had not in law such an interest in his estate as authorized her to file a petition for the sale of the lands belonging to his estate ; that all the proceedings of said probate court, being based upon her petition, were entirely null and void for want of jurisdiction in said court, and did not divest the title of the heirs of said Robert F. Kent ; and that the fact that the administrator of said estate joined with her in the petition, as shown in the record, did not in any way strengthen the defendant's defense.

" 2. That the evidence introduced, if believed by the jury, showed sufficient title in plaintiffs to authorize a recovery against the defendant for the lands sued for.

" 3. That if the jury believed all the evidence introduced on both sides of the case, the plaintiffs had a right to recover the lands sued for, and it would be their duty to find for them.

" 4. That although no evidence had been introduced, showing that the defendant had ever had possession of any of the lands sued for, yet, under the state of the pleadings, the plain-

tiffs had a right to recover the rents of the lands from the time of the issue of the summons and complaint."

The defendant excepted to each of these charges, and he now assigns them as error.

I. W. Garrott, for appellant, made the following points :

1. The widow of the deceased is a "party interested," within the meaning of the statute under which the land in controversy was sold by order of the orphans' court, and might properly file the petition for the sale. The record shows, too, that the administrator joined in the petition ; that is, became a party to it.—Pearson v. Hearin, at the last term ; Saltonstall v. Riley, 28 Ala. 164 ; Field's Heirs v. Goldsby, *ib.* 218.

2. The allegations of the petition were sufficiently certain. The sale is authorized by the statute, "when the court is satisfied that the estate will be less injured by a sale of the lands than of the slaves " : the fact exists only in the future, and it certainly cannot be required that a party shall positively aver a fact which is not in existence. If the petition had positively averred, as a fact, that the estate would be less injured by a sale of the land than of the slaves, the averment would have been only a matter of opinion, or belief, predicated upon the other facts alleged. " As to facts not within knowledge, it would be impossible for a conscientious complainant to aver them otherwise."—Read v. Walker, 18 Ala. 332. It is not the averment of the petition, but the fact that the court " is satisfied that the estate will be less injured," &c., which authorizes the sale. Conceding that the petition would have been defective on demurrer, it must yet be deemed sufficient in a collateral proceeding ; especially, since the decree shows how the court understood its averments.

3. The location of the lands is sufficiently shown, since the court will take judicial notice that Cahaba, and the lands subject to sale at Cahaba, are within the State of Alabama. 1 Green. Ev. § 6 ; Dickinson v. P. & M. Bank, 12 Ala. 54 ; Salomon v. The State, 28 Ala. 88 ; Story's Eq. Pl. § 24.

4. The proceedings cannot be avoided, when collaterally assailed, on account of defects in the petition, because no petition was necessary to give the court jurisdiction. The

statute certainly does not require the filing of a petition as preliminary to the jurisdiction, but, on the contrary, the fact on which the jurisdiction depends must be first made to appear. In Wyman v. Campbell, 6 Porter, which is adhered to in all the subsequent cases, no petition was filed ; and yet the court said, "The orphans' court acquired a potential jurisdiction over the subject-matter, by the death of the ancestor ; and that jurisdiction, if it did not attach earlier, was certainly put in actual exercise, whenever that court assumed to act upon the report of the commissioners, which disclosed the fact that a division could not equitably be made without injury to the heirs." See, also, Lightfoot v. Lewis, 1 Ala. 479 ; Duval v. McLosky, ib. 731 ; Duval v. P. & M. Bank, 10 ib. 636 ; Field's Heirs v. Goldsby, 28 ib. 218 ; Hamlet v. Johnson, 26 Ala. 557 ; Thompson v. Tolmie, 2 Peters, 165 ; Grignon v. Astor, 2 Howard's (U. S.) R. 319 ; McPherson v. Cunliff, 11 Serg. .& Rawle, 422 ; Pointer v. Henderson, 7 Barr, 48 ; 8 Watts, 416. It is well settled, that consent cannot give jurisdiction. Suppose, then, that all the parties interested in the estate were adults, and should personally appear before the court, suggesting that a sale was necessary, &c., and that these facts appeared in the decree ; could the sale be collaterally impeached for want of jurisdiction ? The decree in this case shows that all the parties were before the court, and that the facts existed which authorized the sale.

5. The action of the court is a judicial determination of the fact that the widow was a proper party to present the petition ; and of the additional facts, if jurisdictional they are, that a sale was necessary, and that the estate would be less injured by a sale of the land than of the slaves.—Hamner v. Mason, 24 Ala. 480 ; Wyatt's Adm'r v. Steele, 26 Ala. 639 ; Dabney v. Manning, 3 Ohio, 321 ; Mather v. Hood, 8 Johns. 36 ; 2 Virginia Cases, 268 ; 12 Wheaton, 19 ; 1 Brod. & Bing. 432.

6. The last charge of the court was erroneous. The plea of not guilty is an admission of possession at the time it is filed, but the statute (Code, § 2213) does not declare that it shall relate back to the issue of the summons and complaint.

WM. M. BROOKS, contra.—I. The sale is void, for want of

jurisdiction in the court which ordered it. It is an acknowl-
edged principle, that the record must show, affirmatively and
distinctly, every fact necessary to give the court jurisdiction.
Bishop's Heirs v. Hampton, 15 Ala. 761 ; Commissioners'
Court of Talladega v. Thompson, 18 Ala. 482 ; Commission-
ers' Court of Russell v. Tarver, 25 Ala. 480. Tested by this
principle, the proceedings are fatally defective in the fol-
lowing particulars :—

1. The petition was filed by the widow, who is not a party
interested within the meaning of the statute. Her interests
could not be injured by a sale of the realty. Her dower
would not be affected by the sale. Nor does the statute in-
clude the personal representative of the estate : it em-
braces only those whose interests may be affected by a sale of
the land ; that is, the heirs-at-law—those "who are entitled
to inherit " the land. The act of 1818 differs, in this respect,
from the subsequent act of 1822, which expressly mentions
the personal representative of the estate.

2. The statute only authorizes the land to be sold, when
necessary to prevent a sale of slaves, for the payment of
debts ; while the petition does not aver that a sale is neces-
sary, and the decree does not show that it is necessary for
the payment of debts. Even if the petition is sufficient in
this particular, it is still defective, because it alleges that
" the estate is indebted," when the sale is only authorized when
necessary to pay " the debts of the deceased." The orphans'
court had no authority to charge the land with the payment
of such debts.—Price v. Williamson, 10 Ala. 177.

3. The record does not show that the estate would be less
injured by a sale of the land than of the slaves. The allega-
tions of the petition are not sufficient, and the decree does not
show the fact.

4. Neither the petition, nor the decree of the court, shows
that the lands are within the limits of the State of Alabama.

5. The record does not show that the citation was issued
to the "other parties interested," and of course none was
served on them.

6. The court had no power to order a sale of lands, except
where the deceased died intestate. An unequal disposition

of property by will would present insuperable obstacles to the exercise of such a power.

II. The unqualified plea of not guilty was an admission of the defendant's possession at the commencement of the suit.

WALKER, J.—In determining upon the validity of the decree of the orphans' court, when collaterally assailed, it is only necessary to inquire whether the court had jurisdiction of the subject-matter; for the proceeding is *in rem*, and no mere irregularities can render it void.—Wyman v. Campbell, 6 Porter, 219 ; Couch v. Robinson, *ib.* 262 ; Lightfoot v. Lewis, 1 Ala. 475 ; Duval's Heirs v. McLosky, 1 Ala. 708 ; Perkins v. Winter, 7 *ib.* 855 ; Duval's Heirs v. P. & M. Bank, 10 *ib.* 636 ; Field's Heirs v. Goldsby, 28 *ib.* 218 ; Doe, *ex dem.* Saltonstall, v. Riley, 28 *ib.* 164; Pearson and Wife v. Hearin, at the last term ; Bishop v. Hampton, 15 Ala. 761.

It is contended that the want of jurisdiction in the orphans' court is patent upon the face of the record, because the petition for the sale of the land is filed by the widow, who, it is argued, is not a "party interested," within the meaning of the act under which the decree was made. In the correctness of this argument we have been strongly inclined to acquiesce, because it seems that the widow has no direct interest in the sale of the land, unless there be a will controlling the descent of the property of the deceased. The widow's dower cannot be affected by the sale. That right is as complete after, as before the sale.—Owen v. Slatter, 27 Ala. 547. Nor could her share of the personalty be increased by the appropriation of the heir's lands to the payment of debts; for, under the statute, (Clay's Digest, 191, § 1,) the personalty is devoted to the payment of debts, before distribution, and the heirs would be entitled to an amount in value of the personalty equal to the price of their lands appropriated to the payment of debts, prior to the distribution, in which the widow would participate. Therefore, if the requirement that the person who files the petition shall be a "*party interested,*" is a jurisdictional matter ; and if by "*party interested*" is meant a "*party interested*" *in the sale* of the land itself, it seems to follow that the jurisdiction of the court could not be maintained. We waive the consideration of the question, whether the

*interest* of the party who files the petition is a jurisdictional matter ; and we proceed to the discussion of the other question, whether by "party interested" is meant one interested directly in the sale of the land, or one interested in the estate.

The statute, under which the proceedings in the orphans' court were had, is as follows : " Whenever it shall be made to appear, to the satisfaction of any orphans' court, that *the estate of any deceased person,* or *those entitled to inherit the same,* will be less injured by a sale of the land, or part thereof, for the payment of debts, than by a sale of slaves, such court may, on the petition of *any party* interested, cause a citation to issue to *all other interested persons,* if in the county, or, where this is not the case, by publication of notice in some paper, for such interested party or parties to appear at the next county court, and show cause, if any they can, why sale of the land belonging to the estate should not be ordered ; and on proof of the publication of the notice hereby required, at the next term of such orphans' court, if no cause be shown which the court deems sufficient, such court may order a sale of such land, or whatever parts thereof as may be necessary to satisfy debts, without a sale of negroes; and such sale shall vest in the purchaser the same title, in law or equity, of which such decedent died seized and possessed."—Clay's Digest, 195, § 18. This act of 1818 contemplates, not only that a "party interested" shall file the petition, but that parties interested shall be notified, and thus have an opportunity to resist the petition. The same term is used to designate the person who is to file the petition, and the persons who are to be notified. It is a legitimate inference, that the same meaning is attached to the description, when applied to the latter, as when applied to the former persons ; and if we ascertain that those who are to be notified of the application to sell the land are not merely persons who are directly interested in the sale of the land, but persons interested in the estate, we shall attain a solution of the question, who may make the application for the sale of the land.

The distributees of an estate are interested in having its debts paid off, with the utmost celerity consistent with a discreet administration of it. They are interested, also, in the question, which arises incidentally in this proceeding, whether

the amount of genuine debts against an estate is such as to render a sale of the slaves necessary, unless the exigency is met by a sale of the land ; and also in the question, whether the personal property, other than slaves, is sufficient to pay the debts, or, if not sufficient, what is the extent of the deficiency. They have a direct interest in the policy involved in a substitution of land for slaves as the means of paying debts. If the price of slaves should be temporarily depressed to an unusual degree, while the particular real estate could be sold for an adequate price, it would be the interest of the distributees to seek a sale of the land, rather than the slaves. If a cloud should be hanging over the title to the slaves, which would prevent a sale of them at a fair price, and which might be removed by a brief litigation, it would be the interest of the distributees to provide for the payment of pressing debts by the sale of the land, and allow the administrator time to remove the cloud from the title. In these, and many other contingencies which might be mentioned, the interests of " parties interested" in the estate as distributees might be affected by the proceedings before the orphans' court. It cannot be that the legislature, in directing that " parties interested" should be notified, and have opportunity to show cause against the application, left out of view such interests as those. The converse of the circumstances, which make a distributee interested to defeat a sale of land, would make the same person interested in favor of the application to sell.

In our opinion, the widow must be deemed a party interested, for the purpose of making application to sell land under the statute of 1818. She, along with the other distributees, is a party interested in the proceeding to sell the land, and may, therefore, make the application. The statute contemplates a sale of land rather than slaves, not only in the contingency of its being more beneficial to the heirs, but of its being a less injury to the estate. All persons who are distributees of the estate, and who are therefore interested in every question pertaining to the celerity of its settlement, to the preservation of the property with the smallest loss, to the avoidance of a sale of property, to paying other than just debts, and to the omission to sell when the sale would involve a sacrifice of the property, are competent, under the statute, to file

the petition. In the cases of Couch & Robinson v. Campbell, 6 Porter, 262, and Pearson v. Hearin, at the last term, the jurisdiction in the orphans' court was maintained, upon a petition filed by the administrator, who certainly has no direct interest in the question of the sale of the land, and can have no other interest except in the estate growing out of the duties and obligations of his office. His interest is that of a mere official representative, and cannot be greater than that of those for whom he acts.

It is next objected to the validity of the decree for the sale of the land, that the location of the land ordered to be sold within the State of Alabama, is not shown in the petition. The petition describes the land by stating the section, township and range in the district of lands sold at Cahaba. Cahaba was once the seat of government of the State of Alabama, and is mentioned as such in the constitution of the State ; and is also mentioned as a town in the State of Alabama, in many other public acts of the legislature. We are bound, therefore, to know that Cahaba is in the State of Alabama. The district of lands for sale at Cahaba is defined by public acts of congress, which show that its boundaries are such that it lies within the State of Alabama ; and Cahaba is recognized in an act of congress as the location of the land-office ; and we presume that the land-office is located at Cahaba by order of the president, which location he is by act of congress authorized to make. Cahaba has long been notoriously known and recognized as the place at which the lands of the district were for sale. We feel authorized, upon the authorities cited below, to take judicial notice that lands within the district of lands for sale at Cahaba are within the State of Alabama. Salomon v. The State, 28 Ala. 88 ; Canal Company v. Railroad Company, 4 Gill & Johnson, 63, per Bland, Ch. ; Dickinson v. Branch Bank at Mobile, 12 Ala. 54 ; Commissioners' Court of Russell County v. Tarver, 25 Ala. 480 ; Owings v. Hull, 9 Peters, 625. See the acts of congress cited upon the brief of counsel.

That part of the petition which alleges the grounds of the jurisdiction in the court, is as follows : "Your petitioner further represents to your Honor, that said estate is indebted to about the amount of four thousand dollars, and *that it*

*would probably take the whole amount of the slaves of the said estate to pay the debts of the same.* Your petitioner is *satisfied* that said estate would be less injured by a sale of the real estate described in the petition, than by a sale of the slaves belonging to the estate. If the slaves be sold to pay said debts, it will leave to the heirs a large amount of lands, without any one to cultivate it ; but if said lands be sold, it will leave to the heirs one hundred and seventy acres, on which your petitioner resides, with a sufficient number of slaves to cultivate it ; which is a matter of great importance to said minors, as well as your petitioner." It is undeniably true that the words, " your petitioner is satisfied that said estate would be less injured," &c., would not be deemed an averment in pleading, when assailed by demurrer, or by motion to dismiss. It would be regarded as the assertion of the conviction of the petitioner's mind, and not of a fact. But the question is materially different, when the petition is collaterally assailed, as the predicate of the jurisdiction of the court. When the petition is directly assailed, the question is one of pleading, and the intendments are made against the pleader ; but a different rule prevails, when the proceedings have gone into a decree, under which rights of property have attached. Then every reasonable intendment in the construction of the language of the petition, must be in favor of the validity of the paper. Under a different rule, designing persons might withhold objections for amendable defects, until after the proceedings had terminated, and rights had attached, and then vitiate the whole proceeding ; thus converting a court of justice into a snare.

The courts have gone far in construing the language, upon which the jurisdiction of courts authorized to license such sales is based, so as to maintain the validity of the sales. In Wyman v. Campbell, 6 Porter, 242, a quotation is made from the opinion in Goforth v. Longworth, 4 Ohio, 129, in the following words : "Public policy requires, that all reasonable presumptions should be made in support of such sales, especially respecting matters *in pais.* The number of titles thus derived, and the too frequent inaccuracy of clerks and others concerned in effecting these sales, render this necessary." This court, approving the remark of the Ohio judge, adds :

36

" If a different rule prevailed, purchasers would be timid, and estates consequently be sold at a diminished value, to the prejudice of heirs and creditors." In Thompson v. Tolmie, 2 Peters, 165, it was a question, whether a petition, instituting proceedings for the sale of land under a Maryland statute, showed that one of the heirs was of age. The petition set out the names of the three heirs, and stated that two of them were under age, but was silent as to the age of the other. The court said : " Why specially allege that these two were minors, if Margaret was also a minor ? Every reasonable intendment is to be made in favor of the proceedings ; and their allegation in the petition will fairly admit of the conclusion, that the petitioners intended to assert *that Alice and James only were under age.*" See Wyman v. Campbell, *supra,* and the cases cited in the opinion of the court ; McPherson v. Cunliff, 11 Serg. & Rawle, 436 ; Stanley v. Barker, 26 Vermont, 507.

While the principle, that the jurisdiction of courts of limited authority must be shown by the record, is too deeply rooted in our law for us to supply by intendment the omission of the jurisdictional facts from the record, authority, public policy, and justice alike require that, in determining whether the record does disclose the jurisdictional facts, we should construe the language of the record most favorably for the maintenance of the decree, and, where words are susceptible of two or more constructions, adopt that which will sustain the decree. We should understand the petition as it is reasonable to infer that the party who made it and the judge who acted upon it did understand it, and not as they were bound to understand it. That an estate would be less injured by a sale of land than slaves, is a *fact* which is a deduction from other facts ; and its ascertainment involves, to some extent, the judgment as well as the perception. It is scarcely conceivable that such a fact could be asserted with undoubting certainty. Looking to the nature of the fact, and giving to the petition the liberal rule of construction and intendment which we have laid down, we will regard the sentence under consideration as if the petitioner asserted, from a satisfaction or conviction of the fact, that the sale of the land would be less injurious to the estate than the sale of slaves.

It was argued by counsel, that the petition does not show that it was necessary to sell slaves to pay the debts of the estate. The petition says, "that said estate is indebted to the amount of about four thousand dollars, and that it would *probably* take the *whole* of the slaves to pay the debts of the same." "Take," according to Webster's dictionary, is used as the synonyme of " require," or " be necessary." The sentence, in reference to which the question is made, may be understood as if it read, " it will probably *require* the whole of the slaves to pay the debts." Thus read, the sentence is reasonably susceptible of the construction, that the sale of slaves was necessary, and that it would require *probably* the "whole of them"; thus leaving the number of the slaves required the only matter of doubt. Thus the allegation meets the demands of the statute. It is no objection to the petition, that it avers the necessity of a sale of slaves to pay debts *of the estate*, instead of debts of the *deceased*. The debts of the *estate* are, the debts of the *deceased*, the funeral expenses, and the charges of settling the estate. With all these the personalty is made chargeable by the act of 1806.—Clay's Digest, 191, § 1. Slaves are therefore liable to pay debts of the estate ; and it must be sufficient to show that the slaves would be required to pay the debts of the estate.

We cannot assent to the argument, that the authority to make a sale, under the act of 1818, is restricted to cases of intestates' estates. The authority extends to cases, "where the estate of any deceased person, or those entitled to inherit the same, will be less injured," &c. It is not restricted to cases where those entitled to inherit the estate will be less injured ; but, by its terms, applies to the estate of any deceased person. That cannot be a sound construction which, in effect, interpolates before " estate " the word " intestates." If there is anything in the will of the deceased rendering it improper to sell the land, it might be set up as a sufficient cause for withholding the decree. Whether land devised could be sold in this proceeding, is a question which does not arise in this case, and which we do not intend to decide.

Section 2213 of the Code says, that the plea of not guilty, in an action to recover land, is an admission by the defendant that he is in possession of the premises sued for, unless he

states distinctly upon the record the extent of his possession ; in which case it is an admission of possession to such extent only. This provision of the Code must be construed to mean, that the plea of not guilty is an admission of possession at the commencement of the suit ; for if it is not so construed, it is senseless and without any effect. Section 2209 characterizes the action to recover the land as in the nature of an action of ejectment, in which the usual modern consent rule dispenses with the proof of possession.—Adams on Ejectment, top page 319, marg. 277, bottom 236. The object of the Code was, to make the unqualified plea of not guilty equivalent in its effect to the consent rule. And we should close our eyes to the purposes and intent of the statute, and blindly adhere to the letter, if we should subscribe to the argument, that the plea is an admission of possession only at the time of filing the plea.

The questions decided will probably control the decision of the case in the court below, and we therefore forbear to pass upon the various questions of evidence presented by the bill of exceptions.

The judgment of the court below is reversed, and the cause remanded.

RICE, C. J.—In respect to the lands of a decedent, the orphans' court is an inferior court. If that court had jurisdiction as to the land in controversy, it was by virtue of the act of 1818, quoted in the opinion of my brother Walker, and by virtue of that act only. But under that act, the orphans' court had no jurisdiction, unless, " *on the petition*" of a "party interested," it appeared *that the estate of the deceased, or those who are entitled to inherit the same, will be less injured by a sale of the land, or part thereof, for the payment of debts, than by a sale of slaves.* That does not appear "*on the petition.*" The allegation in the petition is, not that the estate, or those entitled to inherit the same, will be less injured by a sale of the land, &c., but that the "*petitioner is satisfied* that said estate would be less injured by a sale of the real estate," &c. The distinction in pleading, between an averment of the existence of *a fact,* and an averment of *the pleader's belief* of the existence of a fact, is too clear and too sound to be

drawn in question.   And when the jurisdiction of a court of special and limited powers is, by the statute creating the jurisdiction, made to depend upon the allegation of *a particular fact*, that *fact* must be alleged.   An allegation that the pleader (the petitioner) " *is satisfied*" of the existence of that fact, is no more than his assertion of *his belief* of its existence, and cannot support or give jurisdiction.   The issue tendered by such an allegation is, not whether the fact exists, but whether the *pleader believes* it to exist.   Whatever efficacy *individuals* may accord to *faith*, *courts* cannot, consistently with any rules of law, hold the allegation of *the pleader's faith* to be equivalent to, and a substitute for, the allegation of *a jurisdictional fact*.—Jones v. Cowles, 26 Ala. R. 612 ;  Couch v. Campbell, 6 Porter's R. 262, and the cases cited by my brother Walker.

I believe the petition for the sale of the land to be fatally defective ; because it substitutes the allegation of *the petitioner's faith*, for the allegation of the existence of *the jurisdictional fact*.   The law books speak of *jurisdictional fact*, but not of jurisdictional *faith* ; and I shall not assume to be wiser or faster than the books, although I am aware we live in a fast age.

The petition being *thus defective, and actually appearing in the record*, there is no authority for looking to the orders of the orphans' court, as to what appeared, or was proved to that court, on the hearing of that petition.   That court had no jurisdiction, upon that petition, to try or consider anything not alleged in it.   If it tried or heard anything outside of the petition, it acted extrajudicially, and its action is void. " *In the absence of the petition*," the recitals in the orders of the orphans' court *become evidence* of what was alleged in the petition.—Bishop's Heirs v. Hampton, 15 Ala. R. 761.   But when the petition itself appears in the record, as in this case, and does not contain the allegation essential to the jurisdiction of the orphans' court, no recital in the order of that court, as to what appeared or was proved, can give or support its jurisdiction.   To hold otherwise, would be to hold that, although the petition does not bring the case within the jurisdiction of the orphans' court, yet that court may create its own jurisdiction, by its own recitals, in its own orders !

As to *jurisdictional facts, not alleged in the petition*, the pro-

ceedings of the orphans' court, in ordering a sale of land under color of the act of 1818, are as assailable *collaterally*, as they would be on a demurrer to the petition, or in any other direct mode.—Thompson v. Commissioners' Court of Talladega, 18 Ala. R. 694, and authorities above referred to.

I cannot assent to the opinion of my brethren, and feel bound to record my dissent.